**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FERMIN ALDABE,

                Plaintiff,

      v.

SULLIVAN & CROMWELL LLP,
JAMES L. BROMLEY, and
FABIO WEINBERG CROCCO,

                Defendants.

No. 23-cv-850 (AT) (GWG)

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

Sharon L. Nelles (*nelless@sullcrom.com*)
Matthew J. Porpora (*porporam@sullcrom.com*)
Sean P. Fulton (*fultons@sullcrom.com*)
Stella S. Meyer (*meyerste@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

*Counsel for Defendants Sullivan & Cromwell LLP,*
*James L. Bromley, and Fabio Weinberg Crocco*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND .....................................................................................................5

    A.    The FTC Action and Belizean Liquidation............................................5

    B.    The Massachusetts Action .......................................................................8

    C.    The Maryland Litigation and Maryland Warning....................................8

    D.    Motion for Injunction Against Plaintiff, And Plaintiff's Subsequent
           Litigation in Florida and New York State Court .....................................9

    E.    The Bankruptcy Court Enjoins Plaintiff ................................................10

    F.    Plaintiff Commences New Claims by Filing the Amended Complaint................11

THE ALLEGATIONS OF THE AMENDED COMPLAINT........................................12

STANDARD OF REVIEW .......................................................................................13

ARGUMENT .........................................................................................................14

I.     The AC Fails to Allege Civil Aiding and Abetting Liability............................14

    A.    The AC Fails to Plead the Existence of an Underlying Tort ..................15

    B.    Plaintiff Fails to Plead Defendants' Knowledge of any Underlying Tort,
           Much Less That Defendants Provided Substantial Assistance in
           Furtherance of any Such Tort ..............................................................20

II.    The AC Does Not Adequately Plead Punitive Damages ..................................21

III.   Plaintiff's Complaint Should Be Dismissed on the Additional Ground of *Forum
     Non Conveniens* ..................................................................................22

CONCLUSION.......................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*164 Mulberry St. Corp.* v. *Columbia Univ.*,
    771 N.Y.S.2d 16 (N.Y. App. Div. 2004) ...............................................................................19

*In re Abengoa, S.A.*,
    No. 16-10754 (Bankr. D. Del. Mar. 31, 2016) ..........................................................................17

*Acito* v. *IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995).............................................................................................14, 18

*In re Agrokor D.D.*,
    No. 18-12104 (Bankr. S.D.N.Y. July 23, 2018) .......................................................................17

*Aldabe* v. *Atlantic Int'l Bank Ltd.*,
    2021 WL 7973542 (Mass. Super. Mar. 8, 2021) ......................................................................8

*Aldabe* v. *Cohen*,
    2022 WL 958088 (D. Md. Mar. 30, 2022).......................................................................*passim*

*In re Alno AG*,
    No. 18-12651 (Bankr. D. Del. Nov. 26, 2018) .........................................................................17

*Araman* v. *Real Estate Board of New York*,
    2021 WL 5233769 (S.D.N.Y. Nov. 9, 2021)............................................................................4

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)................................................................................................13, 14

*In re Avanti Comic's Grp. Plc*,
    No. 18-10458 (Bankr. S.D.N.Y. Feb. 26, 2018) ......................................................................17

*Baker* v. *Saint-Gobain Performance Plastics Corp.*,
    232 F. Supp. 3d 233 (N.D.N.Y. 2017)...................................................................................14

*In re Banco Nacional S.A. and Reginaldo Brandt Silva*,
    No. 21-11594 (Bankr. S.D.N.Y. Sep 09, 2021) .......................................................................17

*Baraliu* v. *Vinya Cap., L.P.*,
    2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) .......................................................................19, 20

*Bank of Am. Corp.* v. *Lemgruber*,
    385 F. Supp. 2d 200 (S.D.N.Y. 2005)...................................................................................22

*Baxter* v. *Javier*,
    970 N.Y.S.2d 567 (N.Y. App. Div. 2013) ..............................................................................21

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007).....................................................................................................13

*Berman* v. *Morgan Keegan & Co.*,
    2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011) ...........................................18, 20, 21

*Bigio* v. *Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012)........................................................................................14

*In re Blue Ocean Res. Pte. Ltd.*,
    No. 18-22806 (Bankr. S.D.N.Y. June 11, 2018).....................................................17

*Brooks* v. *Von Lenthe*,
    2005 WL 2679716 (S.D.N.Y. Oct. 21, 2005) ...........................................................4

*In re Dicks*,
    306 B.R. 700 (Bankr. M.D. Fla. 2004) ...................................................................10

*Diker* v. *Cathray Const. Corp.*,
    552 N.Y.S.2d 37 (N.Y. App. Div. 1990) ...............................................................21

*Demas* v. *Levitsky*,
    738 N.Y.S.2d 402 (N.Y. App. Div. 2002) ..............................................................20

*Gale* v. *Kessler*,
    461 N.Y.S.2d 295 (N.Y. App. Div. 1983) ..............................................................21

*In re Greensill Bank AG*,
    No. 21-10757 (Bankr. S.D.N.Y. Apr. 20, 2021).....................................................17

*In re Greensill Capital (UK) Limited (in administration)*,
    No. 21-11473 (Bankr. S.D.N.Y. Aug. 18, 2021) ...................................................17

*Iragorri* v. *United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)..........................................................................................22

*Kwarren* v. *Am. Airlines*,
    303 A.D.2d 722 (N.Y. App. Div. 2003) ................................................................20

*Lau* v. *S & M Enterprises*,
    898 N.Y.S.2d 42 (N.Y. App. Div. 2010) ...............................................................19

*Murray* v. *British Broadcasting Corp.*,
    81 F.3d 287 (2d Cir. 1996)..........................................................................................22

*Murphy* v. *Am. Home Prod. Corp.*,
    58 N.Y.2d 293 (1983) .................................................................................................19

*In re Noble Group Ltd.*,
 No. 18-13133 (Bankr. S.D.N.Y. Oct. 19, 2018) ...........................................................17

*PNR, Inc.* v. *Beacon Prop. Mgmt., Inc.*,
 842 So. 2d 773 (Fla. 2003).............................................................................................19

*Reid* v. *Sack*,
 2021 WL 100490 (S.D.N.Y. Jan. 12, 2021) ...........................................................19, 20

*Riccard* v. *Prudential Ins. Co.*,
 307 F.3d 1277 (11th Cir. 2002) .....................................................................................10

*Ross* v. *Louise Wise Servs., Inc.*,
 8 N.Y.3d 478 (2007).......................................................................................................21

*Scerba* v. *Allied Pilots Ass'n*,
 2013 WL 6481583 (S.D.N.Y. Dec. 10, 2013) ..................................................................5

*In re Samarco Mineração S.A. & Cristina Morgan Cavalcanti*,
 No. 21-10754 (Bankr. S.D.N.Y. Apr 19, 2021)..............................................................17

*In re Tall Girl Shop Ltd.*,
 No. 09-15906 (Bankr. S.D.N.Y. Oct. 2, 2009) ...............................................................17

*In re TCA Global Credit Fund, Ltd.*,
 No. 21-11513 (Bankr. S.D. Fla. Feb. 16, 2021)..............................................................17

*Turedi* v. *Coca-Cola Co.*,
 343 F. App'x 623 (2d Cir. 2009) ....................................................................................22

*Wexner* v. *First Manhattan Co.*,
 902 F.2d 169 (2d Cir. 1990)...........................................................................................18

**Statutes**

11 U.S.C. § 1501 .........................................................................................................5, 16

11 U.S.C. § 1508 .............................................................................................................16

11 U.S.C. § 1514...............................................................................................11, 16, 17

11 U.S.C. § 1517.........................................................................................................6, 16

15 U.S.C. § 53.................................................................................................................15

Belize Domestic Banks and Financial Institutions Act, 2012 (Act No. 11/2012) ...................7, 16

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204.....................3, 12, 18, 19

**Rules**

Fed. R. Bankr. P. 2002(q) ...................................................................................................16

Fed. R. Civ. P. 9(b) ....................................................................................................3, 14

Fed. R. Civ. P. 12(b)(6)................................................................................................5, 13

N.Y. C.P.L.R. 215........................................................................................................20

**Other Authority**

Collier on Bankruptcy (Richard Levin & Henry J. Sommer eds., 16th ed. 2018)........................17

*US Federal Trade Commission and Atlantic International Bank Ltd. Re Sanctuary
Belize*, SAN PEDRO SUN (Sept. 24, 2019) ..................................................................6

## PRELIMINARY STATEMENT

Serial Plaintiff Fermin Aldabe's claims are facially meritless given the absurdity of his allegations and his failure to allege even the most basic elements of his claims.  And Plaintiff knows it:  his long history of unsuccessfully advancing similar claims on the same facts shows that Plaintiff is well aware that his current claims have no factual or legal basis.  Indeed, this action marks Plaintiff's *fifth* attempt to challenge in U.S. courts the foreign liquidation proceedings of a Belizean bank, Atlantic International Bank Ltd. ("AIBL"), and an agreement settling claims brought by the U.S. Federal Trade Commission (the "FTC") against AIBL.  All of Plaintiff's prior challenges have been soundly rejected, resulting in dismissals across the board as well as admonitions by two different courts and a pre-filing injunction making clear that Plaintiff risks sanctions if he continues to press such baseless claims.  This action should be dismissed with prejudice, and the Court should consider awarding other relief to dissuade Plaintiff from bringing further vexatious litigation.

In April 2019, the then-Prime Minister of Belize revoked AIBL's banking license and commenced a liquidation proceeding against AIBL governed by the laws of Belize.  Shortly thereafter, in July 2019, the FTC and AIBL reached an agreement regarding the terms of a settlement in connection with an action that the FTC brought against AIBL and certain other defendants before the U.S. District Court for the District of Maryland.  In September 2019, the U.S. Bankruptcy Court for the Southern District of Florida entered an order in AIBL's Chapter 15 case that recognized the Belizean liquidation proceeding as a "foreign main proceeding" under Chapter 15 of the U.S. Bankruptcy Code, and simultaneously lifted the resulting automatic stay to permit the FTC to collect on the judgment stemming from the aforementioned settlement.  Although Plaintiff has repeatedly (and unsuccessfully) argued to the contrary, none of those proceedings bore on the priority of Plaintiff's claim under Belizean liquidation law.

Meanwhile, in the Belizean liquidation proceeding, Plaintiff recovered $49,584.99 of the $72,419.75 that he allegedly had deposited with AIBL through Palma Efuus Ltd., a Belizean company (the "Belizean Company") formed and owned by his wife (Elizabeth M. Braun de Aldabe)—representing roughly a 68% recovery.  Unhappy with that result, and knowing that he has no claim under Belizean law to the $22,834.76 he did not recover abroad, Plaintiff has pursued a litigation crusade in the United States against AIBL, the liquidator of AIBL, members of the liquidator's team, the Central Bank of Belize, numerous U.S. and Belizean government officials, and U.S. counsel for AIBL.  Plaintiff's prior challenges of the results of the Belizean proceeding in U.S. courts have been unanimously rejected by the Bankruptcy Court, the Maryland district court, a Massachusetts state trial court, and a Massachusetts state appeals court.  Recognizing the frivolity and vexatiousness of Plaintiff's relentless actions, on October 25, 2022, the Bankruptcy Court granted the Liquidator's motion for a pre-filing injunction, which bars Plaintiff from filing further actions related to the AIBL liquidation proceedings without leave of that court, because such actions "are patently frivolous and vexatious."  The only reason the instant action is not barred by that injunction is because Plaintiff filed his original complaint in this action four weeks before the injunction issued.[1]

---

[1]    The pre-filing injunction provides that "Mr. Fermin Aldabe is permanently enjoined from, directly or indirectly . . . commencing or filing any proceeding, complaint, *claim*, suit, grievance, writ, petition, request, motion, objection, accusation, charge or similar instrument or otherwise taking any action relating to AIBL," its U.S. and Belizean bankruptcy proceedings, or the FTC litigation, "without first obtaining leave from [the Bankruptcy Court]."  (Pre-Filing Injunction, Ex. 3 ¶ 2 (emphasis added).)  Notwithstanding that the pre-suit injunction did not bar Plaintiff from continuing to litigate his original complaint, Plaintiff's filing of the AC—which commenced brand new *claims* against Defendants (on new but equally frivolous theories of liability) after the injunction issued and without permission of the Bankruptcy Court—violates the injunction and is reason alone for this Court to dismiss the AC with prejudice.  (*See* Pre-Filing Injunction, Ex. 3 ¶ 3.)  All exhibits refer to the declaration of Matthew J. Porpora filed in support of this motion.

Tellingly, the Amended Complaint ("AC") does not advance a single primary claim against Defendants or even allege that Defendants owed any direct duty to Plaintiff. Instead, Plaintiff resorts to alleging that Defendants Sullivan & Cromwell LLP, James L. Bromley, and Fabio Weinberg Crocco "aided and abetted" AIBL and the FTC in breaching duties that, Plaintiff contends, AIBL and the FTC owed to Plaintiff—duties that Plaintiff has failed to define but generally maintains arose in connection with AIBL's filing of an "Agreed Order" that lifted the Chapter 15 automatic stay and permitted the FTC to collect its stipulated settlement. Plaintiff contends that Defendants "aided and abetted" AIBL's and the FTC's supposed breaches by representing AIBL in the Chapter 15 Case. Even leaving aside that Defendants did not represent AIBL in the Chapter 15 Case when the Agreed Order was filed, the AC is devoid of any facts explaining how Defendants as counsel (or otherwise) were responsible—primarily, vicariously, or otherwise—for the actions of AIBL or the FTC in connection with the filing of their settlement. This is all dispositive. But if more is needed, the AC should be dismissed for the following three additional reasons:

*First*, Plaintiff fails to adequately plead the existence of any underlying tort, which is a prerequisite for establishing "aiding and abetting" liability claims. Plaintiff's so-called statutory duty claims (Claims 1–2) fail to identify any statute that creates a duty between either the FTC or AIBL and him. Plaintiff's fraudulent inducement and misrepresentation claims (Claims 3–5) fail to identify any misstatement at all—let alone with the particularity required under Rule 9(b)'s heightened pleading standard. Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim (Claim 6) fails because the filing of the FTC agreement was not an action "in the conduct of any trade or commerce," as required by Florida law. And nothing about seeking court authorization to lift the stay and permit the enforcement of the FTC settlement agreement in

the Chapter 15 Case is wrongful, let alone the type of "extreme and outrageous" conduct that can serve as a basis for a claim of intentional infliction of emotional distress ("IIED") (Claim 7).

*Second*, even if Plaintiff had adequately alleged the FTC or AIBL owed Plaintiff a duty and breached that duty, Plaintiff fails to adequately allege that Defendants had knowledge of any such alleged breaches or substantially participated in them.  Nor could Plaintiff have ever done so, given that Defendants did not file the FTC settlement or even represent AIBL in the Chapter 15 Case at the time of the filing.

*Third*, New York is not a convenient forum for litigating Plaintiff's claims.  Plaintiff's alleged damages supposedly arise from the treatment of a Belizean creditor's claim against a Belizean bank in a Belizean liquidation proceeding under Belizean law.  Such Belizean-centric claims have no place in any U.S. court, including the New York courts.

Plaintiff's claims should be dismissed.  Because Plaintiff was put on notice that his claims are frivolous long before he filed the AC, that dismissal should be with prejudice.  Further, while sanctions would be appropriate under these circumstances,[2] a dismissal with prejudice would

---

[2]     "[L]eave to amend is not required where it would be futile, such as when even a liberal reading of the complaint gives no indication that a valid claim might be stated."  *Araman* v. *Real Estate Board of New York*, 2021 WL 5233769, at *2 (S.D.N.Y. Nov. 9, 2021) (citation and internal quotation marks omitted) (dismissing an action without leave to amend "[p]articularly in light of [p]laintiff's history of frivolous filings").  Indeed, here sanctions would be appropriate given Plaintiff's frivolous, vexatious and never-ending litigation campaign, as recognized by the Bankruptcy Court, which enjoined Plaintiff from filing without leave of that court and warned Plaintiff of his exposure to sanctions in this suit.  *See Brooks* v. *Von Lenthe*, 2005 WL 2679716, at *11 (S.D.N.Y. Oct. 21, 2005) ("The Court notes that this is the second time [plaintiff] has sued the exact same defendants in the United States based on the same events . . . .  This case is frivolous, and while [plaintiff] is *pro se*, that does not excuse him from the consequences of violating Rule 11 of the Federal Rules of Civil Procedure.  While the Court at this time will not *sua sponte* impose Rule 11 sanctions on [plaintiff], he is on notice now that he may (and likely will) be sanctioned in the future for frivolous conduct if he were to file this case again in a United States court."), *report and recommendation adopted*, 2006 WL 177146 (S.D.N.Y. Jan. 24, 2006), *aff'd*, 207 F. App'x 85 (2d Cir. 2006).

suffice, given that Plaintiff would be barred from filing further AIBL-related claims against Defendants without leave of the Bankruptcy Court, which would protect Defendants from further vexatious litigation.

## BACKGROUND

**A.     The FTC Action and Belizean Liquidation**

**1.     The FTC Enforcement Action**

Plaintiff's wife, Elizabeth Braun, was a customer of AIBL who maintained an account through the Belizean entity Palma Efuus, Ltd. *Aldabe* v. *Cohen*, 2022 WL 958088, at *2 (D. Md. Mar. 30, 2022).   On October 31, 2018, the FTC filed a complaint against AIBL (and numerous other defendants) in Maryland district court for alleged violations of the Federal Trade Commission Act.   (*See* AC, Ex. 1 ¶ 13.)[3]  In November 2018, the Maryland court "entered several orders freezing the assets of AIBL."  *Aldabe* v. *Cohen*, 2022 WL 958088, at *2.

The FTC action and related freeze of AIBL's U.S. assets made it difficult for AIBL to continue operating and, in April 2019, the then-Prime Minister of Belize revoked AIBL's banking license, ordered that it be liquidated, and appointed the Liquidator to handle liquidation proceedings.   (AC, Ex. 1 ¶¶ 13–16; Pre-Filing Injunction, Ex. 3 at 13 (Tr. 7:13–17).)   The Liquidator subsequently filed a petition under Chapter 15 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 1501–24, before the Bankruptcy Court for recognition of the Belizean liquidation proceeding

---

[3]      "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Scerba* v. *Allied Pilots Ass'n*, 2013 WL 6481583, at *2 n.2 (S.D.N.Y. Dec. 10, 2013).  The attached exhibits—often Plaintiff's own filings in other courts—are included for relevant context.  These additional exhibits do not bear on the infirmities of the AC, which are apparent on its face.

on May 13, 2019.  (Chapter 15 Petition, Ex. 11.)  Initially, AIBL was represented in the FTC and the Chapter 15 Case by the law firm of Dorsey & Whitney LLP.  (Order, Ex. 12.)

After prolonged litigation before both the Maryland District and Bankruptcy Courts, in July 2019, the FTC and AIBL reached a settlement agreement with respect to the FTC Action.  (Pre-Filing Injunction, Ex. 3 at 14 (Tr. 8:10–12).)  Subsequently, on September 19, 2019, the Bankruptcy Court entered an order (the "Agreed Order"), recognizing the Belizean liquidation proceeding as a foreign main proceeding under 11 U.S.C. § 1517 and allowing the FTC to collect its stipulated settlement judgment.  (Agreed Order, Ex. 4.)  The following day, on September 20, 2019, Plaintiff emailed the Liquidator an objection to the settlement, roughly four days prior to the Liquidator's second notice regarding the settlement.  (*See* Pre-Filing Injunction, Ex. 3 at 15 (Tr. 9:2–6); *see also id.* at 14 (Tr. 8:18–24) ("[A]t a hearing on October 6, 2020 . . . Mr. Aldabe acknowledged receipt of the September 24th statement from the [Liquidator].").)[4]

### 2.      Plaintiff's Objection in the Belizean Liquidation

On January 8, 2020, Plaintiff filed a formal objection regarding the Liquidator's disbursement schedule in the Belizean liquidation proceeding.  (Aldabe Objection, Ex. 14.)  In the objection, Plaintiff protested that the Belizean Company's claim had not yet been disbursed and a date for disbursement had not been set, even though the liquidator had allowed in full the Belizean Company's claim and set an initial distribution target of February or March 2020.  (Ex. 14; *see* Liquidation Schedule, Ex. 15 at 14; Pre-Filing Injunction, Ex. 3 at 29 (Tr. 23:18-22).)  The Belize's Central Bank Standing Committee for Review of Objections considered Plaintiff's objection and,

---

[4]      *See Settlement Between the US Federal Trade Commission and Atlantic International Bank Ltd. Re Sanctuary Belize*, SAN PEDRO SUN (Sept. 24, 2019), https://www.sanpedrosun.com/business-and-economy/2019/09/24/settlement-between-the-us-federal-trade-commission-and-atlantic-international-bank-ltd-re-sanctuary-belize.

on February 25, 2020, upheld the Liquidator's decision to settle Plaintiff's claim "in accordance with Section 116 of the Domestic Banks and Financial Institutions Act."  (Aldabe Objection, Ex. 14; DBFIA, Ex. 20.)

Plaintiff sought payment of $72,419.75—the entire amount of the depositor claim of the Belizean Company.  As Plaintiff alleged in his Maryland litigation, his wife formed the Belizean Company and he ran its day-to-day operations.  *Aldabe* v. *Cohen*, 2022 WL 958088, at *2.  Plaintiff would contract with himself to produce the carbon credits that the Belizean Company would sell, and the proceeds would be deposited in the AIBL account.  *Id.*  Plaintiff claims that he is the Director and Secretary of the Belizean Company and a 10% shareholder, having acquired such title by vote of 100% of the shareholders and the shares for one cent from his wife on September 29, 2020.  (Aldabe Decl., Ex. 16.)

In the disbursement schedule, the Liquidator explained that all valid claims would be subject to Belizean law governing the priority of distribution.  (Ex. 15 at 14.)  In his objection, Plaintiff made no comment on the Liquidator's articulation of Belizean law.  Subsequently, the Liquidator issued two distributions (on June 11 and November 10, 2020) to AIBL depositors based on this prioritization.  (Pre-Filing Injunction, Ex. 3 at 15 (Tr. 9:8–12).)  For the Belizean Company, the value totaled $49,484.99, an amount equal to 68.46% of its original claim, leaving $22,834.76 unrecovered.  (*Id.* at 16 (Tr. 10:7–10).)  All depositors recovered the same percentage.  (*Id.* at 15 (Tr. 9:8–12).)

In September 2020, before the Bankruptcy Court, Plaintiff refocused his grievance to argue that the Liquidator violated *Belizean law* by paying the FTC settlement ahead of the claims of AIBL's depositors.  (Aldabe Motion, Ex. 13 at 1.)  The Bankruptcy Court summarily rejected

Plaintiff's attempt to litigate a disagreement over Belizean law between a Belizean creditor and a Belizean debtor in a U.S. court.  (*See* Oct. Order, Ex. 18.)

**B.      The Massachusetts Action**

Apparently displeased with the results of the Belizean bankruptcy proceeding and the Bankruptcy Court's clear instruction to challenge those results in Belizean court, Plaintiff and Mrs. Braun filed a complaint on April 16, 2020, in Massachusetts state court against AIBL, its CEO and a former employee, the Liquidator and a member of his team, the then-Prime Minister of Belize, the then-Attorney General of Belize, and the then-Governor of the Central Bank of Belize, as well as unknown executives and directors of AIBL and members of the Liquidator's and Central Bank's teams.  (Mass. Compl. Ex. 5.)  In the complaint, Plaintiff sought $74,999 in damages and alleged two counts of fraudulent misrepresentation and conspiracy to defraud, and three counts of conspiracy to defraud depositors.  (*Id.* ¶¶ 26–99.)  The defendants moved to dismiss, after which Plaintiff engaged in extensive motion practice, including, for example, by making multiple requests for jurisdictional discovery.  (*See* Mass. Docket, Ex. 6, at Nos. 12, 21.)  On March 8, 2021, the Massachusetts court dismissed Plaintiff's complaint for lack of personal jurisdiction.  *See Aldabe* v. *Atlantic Int'l Bank Ltd.*, 2021 WL 7973542, at *1 (Mass. Super. Mar. 8, 2021), *aff'd*, 182 N.E.3d 343 (Mass. App. Ct. 2022).

**C.      The Maryland Litigation and Maryland Warning**

After losing in Massachusetts, Plaintiff filed another complaint against AIBL and various individuals in Maryland district court on March 30, 2021.  *See Aldabe* v. *Cohen*, 2022 WL 958088, at *3 (D. Md. Mar. 30, 2022).  In the Maryland action, Plaintiff sued the Liquidator, the Government of Belize, a former Governor of the Central Bank of Belize, Creighton Magid (AIBL's counsel), and Commissioners of and counsel for the FTC.  *Id.* (Md. Compl., Ex. 7 ¶¶ 2–11.)  As in the Massachusetts complaint, Plaintiff asserted theories of misrepresentation and fraud,

but this time in connection with the FTC settlement.  He sought $1.2 million in damages for "medical bills," and "$5 million in non-economic damages; punitive damages; and interest." *Aldabe* v. *Cohen*, 2022 WL 958088, at *3.

With respect to the FTC defendants, Plaintiff focused on how the FTC commissioners and officers "owed [a] duty of care to the [Maryland] court to uphold the law" and breached that duty by, for example, "fail[ing] to tell the [Maryland] court that such an asset freeze would produce a bank run" and failing to tell the court that "they breached [15 U.S.C. § 45(a)(2)] which precludes the FTC from suing banks."  (Md. Compl., Ex. 7 ¶¶ 37, 69–72, 86.)  Similarly, with respect to Mr. Magid, Plaintiff asserted that "Magid breached [a] duty of care when he did not use the defense that AI Bank was a bank and therefore that the FTC had no jurisdiction to file a claim."  (*Id.* ¶ 123.)  In advancing those claims, Plaintiff alleged that there was a duty of disclosure to the court, and asserted a misrepresentation by omission resulting in physical harm.

On March 30, 2022, the Maryland district court dismissed with prejudice all counts against the Belizean defendants and Mr. Magid.  *Aldabe* v. *Cohen*, 2022 WL 958088, at *11.  In dismissing the claims, the court "urge[d] Plaintiff to take careful note that it is not dismissing his claims on technical grounds, but on his substantive lack of any cognizable cause of action."  *Id.* at *9 n.12.  The court went on to warn Plaintiff about the dangers of asserting frivolous claims: "Plaintiff is expressly cautioned that, should he try to raise variations of his concerns in further AIBL-related lawsuits, other courts may well be inclined to impose appropriate sanctions."  *Id*.

**D.    Motion for Injunction Against Plaintiff, And Plaintiff's Subsequent Litigation in Florida and New York State Court**

On September 15, 2022, the Liquidator filed a motion in the Bankruptcy Court seeking, among other things, a pre-filing screening injunction against Plaintiff to try to bar him from bringing further vexatious litigation concerning issues related to the AIBL liquidation.

(Liquidator Motion, Ex. 19.)  Just four days later, on September 19, 2022, Plaintiff filed yet another AIBL-related suit, this time in Florida state court, alleging torts against Belizean government officials.  (Miami Compl., Ex. 9.)  And one week later, on September 26, 2022, Plaintiff commenced this action in New York Supreme Court, suing AIBL's counsel—Sullivan & Cromwell, James Bromley, and Fabio Weinberg Crocco—for damages based on Plaintiff's inability to recover all of the Belizean Company's assets in the Belizean bankruptcy proceedings.

### E.    The Bankruptcy Court Enjoins Plaintiff

On October 25, 2022, the Bankruptcy Court granted the Liquidator's motion, enjoining Plaintiff from pursuing new AIBL-related litigation without leave of that court.  (Pre-Filing Injunction, Ex. 3 at 12 (Tr. 6:10–12).)[5]  While that injunction was prospective and did not prevent Plaintiff from pursuing already existing actions, the Bankruptcy Court expressly cautioned that Plaintiff might face sanctions if the court that adjudicates Plaintiff's claims in New York—*i.e.*, this Court—determines that those claims are frivolous (*see id.* at 38 (Tr. 32:11–16)).

The Bankruptcy Court explained that Plaintiff "has filed multiple claims in several jurisdictions against the debtor, [the Liquidator], the FTC, and counsel in what the Court concludes from review of the record is a vexatious attempt to re-litigate the propriety of the settlement and the treatment of depositors . . . [and] that treatment of the depositors is a matter of Belizean law." (*Id.* at 12 (Tr. 6:1–9).)  The Bankruptcy Court went on to find that Plaintiff's "continued litigation against AIB[L], or against [the Liquidator, his team, and] others involved in the AIB[L] liquidation

---

[5]    As the Florida court noted in its bench ruling (Ex. 3 at 44–45 (Tr. 38:12-39:10)), it is well-settled that Bankruptcy courts have the authority to enjoin vexatious litigants "where the litigants have no objective, good-faith expectation of prevailing," *In re Dicks*, 306 B.R. 700, 701 (Bankr. M.D. Fla. 2004), as long as the injunction does not "completely foreclose a litigant from any access to the courts," *Riccard* v. *Prudential Ins. Co.*, 307 F.3d 1277, 1298 (11th Cir. 2002).

. . . based on the FTC settlement that's long been approved and implemented"—"[t]hose are patently frivolous and vexatious claims." (*Id.* at 43 (Tr. 37:2–12).)[6]

The Bankruptcy Court further held that the professionals—*e.g.*, lawyers—involved in the Chapter 15 Case did not have a duty to notify Plaintiff or other depositors of the Chapter 15 Case. (*Id.* at 43–44 (Tr. 37:19-38:4).) It explained that "the bankruptcy rules do not require notice to creditors and depositors, and the code section requiring notice to creditors and foreign creditors, Section 1514, is not applicable, and was not applicable in this Chapter 15 case." (*Id.* at 43–44 (Tr. 37:25-38:4).) Most plainly, "[Mr.] Aldabe's beliefs or allegations are wrong with respect to the adequacy of notice . . . . [T]he [Liquidator] was not required to serve Mr. Aldabe or the entity, Palma Efuus, or any creditors with a notice of filing of the Chapter 15 case." (*Id.* at 16–17 (Tr. 10:22-11:3).)

### F.    Plaintiff Commences New Claims by Filing the Amended Complaint

Undeterred by the Bankruptcy Court's injunction, on January 13, 2023, Plaintiff filed the AC. (AC, Ex. 1.) Although it is, at bottom, nothing more than another attack on the results of a foreign bankruptcy proceeding, the AC drastically changed the nature of Plaintiff's original complaint by adding a different theory of liability and new claims that purport to invoke federal law.[7] Plaintiff did not seek the Bankruptcy Court's permission to file the AC or commence the new claims it asserts.

---

[6]    In his crusade, Plaintiff reportedly antagonized members of the Central Bank of Belize and an attorney for the FTC and, in a declaration submitted to the Bankruptcy Court, made inappropriate reference to the ethnicity of one of the Defendants. (*See* Second Aldabe Decl., Ex. 17 ¶¶ 9, 20–25.)

[7]    On January 11, 2023—just two days before filing the AC in this action—Plaintiff filed an Amended Complaint in the Florida state court action. The amended complaints in both actions are nearly identical. (Miami Am. Compl., Ex. 10.)

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff filed the AC on January 13, 2023, *after* the Bankruptcy Court issued its pre-filing injunction, and *after* it expressly warned Plaintiff that he risks sanction in New York if he proceeds on frivolous claims.

The AC is a complete re-write of Plaintiff's original complaint, and thus violates the pre-filing injunction's prohibition on Plaintiff's commencement of new AIBL-related claims without the Bankruptcy Court's permission.  But even leaving that violation aside, Plaintiff's latest filing flies in the face of the Bankruptcy Court's express warning:  the new claims Plaintiff asserts are just as frivolous as their predecessors and subject him to sanctions.  Now, instead of alleging that Defendants perpetuated a fraud on the Bankruptcy Court, Plaintiff contends that Defendants "aided and abetted" the "misconduct" of AIBL and the FTC—that is, their negotiation of the Agreed Order, and AIBL's subsequent filing of that order in the Bankruptcy Court.  Premised on that plainly legitimate conduct alone, Plaintiff asserts eight counts against Defendants:

- Aiding and Abetting the FTC Breach its FTC Act Section 13(b) Duty;

- Aiding and Abetting AIBL Breach Belize and Federal Statutory Duties;

- Conscious Misrepresentation Involving Risk of Physical Harm (Restatement (Second) of Torts § 310);

- Negligent Misrepresentation Involving Risk of Physical Harm (Restatement (Second) of Torts § 311);

- Fraudulent Inducement;

- Florida's Deceptive and Unfair Trade Practices Act (FDUTPA);

- Intentional Infliction of Emotional Distress; and

- Punitive Damages.

The AC does not allege that Defendants owed Plaintiff any duty, or that any Defendant ever made a single misstatement.  Rather, it alleges that Defendants aided and abetted

the Liquidator in making various misrepresentations in the Agreed Order—specifically, that (1) "the payment to the FTC would not breach any duty owed by AIB to depositors," (2) "it did not owe any duty to depositors," (3) "depositors would not suffer any harm," (4) "depositors were notified of the proceedings but chose not to appear," (5) "the FTC had the authority to seek pecuniary damages from depositors under the FTC Act without due process," (6) "the bankruptcy court had authority to grant pecuniary relief to the FTC," and (7) "no *proper proof* was needed to seek said relief." (AC ¶ 22.) As a result of these purported misrepresentations by the Liquidator, "the court approved the agreed order," which, according to Plaintiff, in turn "caused [Mr. Aldabe] to suffer damages for $22,834.75," the portion of Plaintiff's AIBL deposit that he did not recover in the Belizean liquidation proceeding. (AC ¶ 25.) Nowhere in the AC does Plaintiff attempt to allege how Defendants possibly aided and abetted the Liquidator (or anyone else) in making misrepresentations in an order that was filed with the Bankruptcy Court at a time when Defendants had not yet even appeared in that Chapter 15 Case.

Based on this, Plaintiff asks the Court to hold Defendants liable for Plaintiff's physical, emotional, pecuniary, and punitive damages. (AC at 12.) In addition to the $22,834.75 that Plaintiff wishes he received in the Belizean liquidation proceedings, Plaintiff seeks to tag Defendants with liability for his "physical harm and inflicted emotional distress, including among others premature aging, thickening of the heart walls, high blood pressure, sleeping disorder, irate spells, [and] sweating of palms." (AC ¶ 25.)

## STANDARD OF REVIEW

Under Rule 12(b)(6), this Court must dismiss the AC if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted).  Allegations that "are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.

When a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity."  *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995).  In such cases, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Id.* (internal quotation marks and citation omitted).

## ARGUMENT

## I.   THE AC FAILS TO ALLEGE CIVIL AIDING AND ABETTING LIABILITY.

Not a single count of the AC alleges that Defendants directly caused harm to Plaintiff.  Rather, each alleges that "[D]efendants aided and abetted AIB[L] [or the FTC] to breach" duties that those entities allegedly owed to Plaintiff.  (AC ¶¶ 29, 33, 39, 44, 47, 51, 54.)

To establish aiding and abetting liability under New York law, Plaintiff bears the burden of "alleging facts sufficient to support an inference of (1) the existence of an underlying tort; (2) the defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying tort's commission."  *Bigio* v. *Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (internal quotation marks and citations omitted).  Plaintiff comes nowhere close to carrying that burden.  *First*, Plaintiff fails to allege facts sufficient to support an inference of the existence of an underlying tort.  *Second*, the AC does not support an inference that Defendants knew about any such underlying tort, much less offered substantial assistance to advance it.

14

A.      **The AC Fails to Plead the Existence of an Underlying Tort.**

It is black letter law that, in order to state a tort claim, Plaintiff must plead duty, breach, causation, and damages.  *See, e.g.*, *Baker* v. *Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 243 (N.D.N.Y. 2017), *aff'd in part, appeal dismissed in part*, 959 F.3d 70 (2d Cir. 2020) (citations omitted) ("The familiar elements of negligence under New York law are duty, breach, causation, and damages.").  Plaintiff fails to adequately plead a single one of these elements.   Indeed, while the AC contains threadbare recitals that certain statutes and the Restatement give rise to a duty, Plaintiff makes no attempt to identify any relevant duty, adequately allege how the supposed tortfeasor (whether it be the FTC or AIBL) breached any such duty, explain how any supposed breaches caused harm to Plaintiff, or adequately allege resulting damages.  Plaintiff's failure to plead each element of the underlying tort claims, even in the most basic terms, prevents him from recovering under an aiding and abetting theory of liability.  Moreover, the following fatal defects in each claim also render the AC deficient:

1.      **Among Other Deficiencies, Count 1 Fails to Plead a Duty Owed by the FTC to Plaintiff.**

Plaintiff alleges that "[t]he FTC owed duty [*sic*] to plaintiff not to seek pecuniary damages from him or AIB[L] under section 13(b) of the FTC Act and under constitutional due process and from a court that lacked authority to grant such relief."  (AC ¶ 27.)  Plaintiff also alleges that the FTC "owed duty [*sic*] to plaintiff, a consumer, to protect him from the deceptive and unfair practices by AIB and all other defendants who assisted AIB."  (*Id.*)  Such conclusory allegations are precisely the type the Supreme Court discounted in *Iqbal*.

Section 13(b) of the Federal Trade Commission Act (the "FTC Act") grants the Commission power, in a "proper case[]," to seek a permanent injunction to enjoin violations of the FTC Act.  15 U.S.C. § 53.  Nothing in that section can be read to have created a statutory duty

extending from the FTC to Plaintiff.  Unsurprisingly, Plaintiff does not cite a single case (and

Defendants are not aware of any) that suggests any such duty exists.  Likewise, Plaintiff fails to

identify any authority, statutory or otherwise, that imposes a duty on the FTC that can be enforced

by individual consumers.

### 2. Count 2 Fails to Plead, *Inter Alia*, Any Duty Arising Under U.S. or Belizean Bankruptcy Law.

Plaintiff alleges that "AIB[L] owed a statutory duty to [the Belizean Company] and

plaintiff under § 116 of the Domestic Banks and Financial Institutions Act of Belize, 2012

(DBFIA), 11 U.S.C. § 1517, 11 U.S.C. § 1508, 11 U.S.C. § 1501, and FRBP 2002(q)."  (AC ¶ 31;

*see also id.* ¶ 21 (adding 11 U.S.C. § 1514).)  That is wrong.  None of these sections imposed on

AIBL any statutory duty to Plaintiff, let alone any duty that AIBL breached by filing the FTC

Settlement.  Instead,

- Section 116 of the Domestic Banks and Financial Institutions Act of Belize sets forth the priority of claims in a Belizean liquidation proceeding;

- Section 1517 of the Bankruptcy Code establishes the procedures for recognition of a foreign liquidation proceeding;

- Section 1508 of the Bankruptcy Code sets forth the groundwork for interpreting the provisions of Chapter 15 of the Bankruptcy Code;

- Section 1501 of the Bankruptcy Code explains the purposes of Chapter 15 proceedings; and

- Federal Rules of Bankruptcy Procedure Rule 2002(q) and 11 U.S.C. § 1514 provide for notice of Chapter 15 proceedings to *certain* parties.

Nothing in these provisions create a statutory duty between AIBL and Plaintiff.  Plaintiff's generic

allegation that AIBL is "disregard[ing] the interest of foreign depositors" (AC ¶ 21), is nothing

more than an attempt to collaterally challenge the rulings of the Bankruptcy Court.

To the extent Plaintiff is alleging that Bankruptcy Rule 2002(q) imposed a duty on

AIBL to notify depositors of asset distributions, the Bankruptcy Court already held that no such

duty existed.   (Pre-Filing Injunction, Ex. 3 at Tr. 10:22–11:3 ("[Mr.] Aldabe's beliefs or allegations are wrong with respect to the adequacy of notice . . . . [T]he [Liquidator] was not required to serve Mr. Aldabe or the entity, [the Belizean Company], or any creditors with a notice of filing of the Chapter 15 case.").)   And that holding is consistent with the widely accepted principle that Section 1514 does not apply in the context of an ancillary Chapter 15 case like AIBL's Chapter 15 Proceeding.[8]   Indeed, bankruptcy courts in the Southern District of New York and other jurisdictions routinely declare that this provision is inapplicable or can be waived in Chapter 15 cases.[9]

In any event, Plaintiff acknowledges in his original complaint that he in fact received notice of the Belizean liquidation proceeding and the settlement between AIBL and the FTC.   (Compl., Ex. 2 ¶ 13 ("On 21 May 2019 . . . AIB[L] sent to all depositors (including [the Belizean Company]) an email stating that AIB had been put into liquidation, that Mr[.] Murillo had been appointed as liquidator and that further instructions would follow for depositors (including [the Belizean Company]) to make claims as creditors.").)   And, as is clear from his

---

[8]    *See* Collier on Bankruptcy ¶ 1514.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).

[9]    *See, e.g.*, *In re TCA Global Credit Fund, Ltd.*, No. 21-11513, 5 (Bankr. S.D. Fla. Feb. 16, 2021), ECF No. 8; *In re Greensill Bank AG*, No. 21-10757, 1 (Bankr. S.D.N.Y. Apr. 20, 2021), ECF No. 8 ("[T]he notice requirements set forth in section 1514(c) of the Bankruptcy Code are inapplicable in this chapter 15 proceeding."); *In re Banco Nacional S.A.*, No. 21-11594, 2 (Bankr. S.D.N.Y. Sept. 16, 2021), ECF No. 10; *In re Greensill Capital (UK) Limited (in administration)*, No. 21-11473, 4 (Bankr. S.D.N.Y. Aug. 18, 2021), ECF No. 9; *In re Samarco Mineração S.A.*, No. 21-10754, 2 (Bankr. S.D.N.Y. Apr. 22, 2021), ECF No. 14; *In re Abengoa, S.A.*, No. 16-10754, 4 (Bankr. D. Del. Mar. 31, 2016), ECF No. 21; *In re Alno AG*, No. 18-12651, 2 (Bankr. D. Del. Nov. 26, 2018), ECF No. 14; *In re Noble Group Ltd.*, No. 18-13133, 2 (Bankr. S.D.N.Y. Oct. 19, 2018), ECF No. 10; *In re Agrokor D.D.*, No. 18-12104, 3 (Bankr. S.D.N.Y. July 23, 2018), ECF No. 19; *In re Blue Ocean Res. Pte. Ltd.*, No. 18-22806, 3 (Bankr. S.D.N.Y. June 11, 2018), ECF No. 10; *In re Avanti Comic's Grp. Plc*, No. 18-10458, 2 (Bankr. S.D.N.Y. Feb. 26, 2018), ECF No. 11; *In re Tall Girl Shop Ltd.*, No. 09-15906, 3 (Bankr. S.D.N.Y. Oct. 1, 2009), ECF No. 15.

extensive pleadings in the Bankruptcy Court, Plaintiff had ample opportunity to present his grievances in the Chapter 15 Proceeding.

### 3.     Counts 3–5 Come Nowhere Close to Pleading a Misrepresentation.

Plaintiff alleges that AIBL either "made misrepresentations in the agreed order," "gave false information in the agreed order," and/or "intentionally made misrepresentations to induce the court to approve the agreed order."  (AC ¶¶ 36, 42, 46.)  "A plaintiff alleging aiding and abetting claims sounding in fraud must also plead the elements of aiding and abetting with particularity."  *Berman* v. *Morgan Keegan & Co.*, 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012) (citation omitted).  Under that heightened pleading standard, "the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (internal quotation marks and citation omitted).

Plaintiff fails to identify any allegedly fraudulent statements, much less allege where and when the statements were made or why the statements were fraudulent.  *See id.*  Because the AC's fraud allegations are based entirely "on speculation and conclusory allegations," they must be dismissed.  *See Wexner* v. *First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (affirming the trial court's dismissal where "allegations are conclusory and unsupported by the amended complaint").

### 4.     Count 6 Fails Because Nothing in the AC Implicates FDUTPA.

Plaintiff alleges that "AIB owed duty [*sic*] to plaintiff under FDUTPA," and breached that duty by filing the Agreed Order in the Chapter 15 Case.  (AC ¶ 49.)  Even if Plaintiff could establish some kind of wrongful act by AIBL (he cannot), the FDUTPA does not confer on bankruptcy litigants a private cause of action.  The Florida Supreme Court has held that "the

FDUTPA applies to private causes of action arising from single unfair or deceptive acts *in the conduct of any trade or commerce*." *PNR, Inc.* v. *Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (emphasis added). Because AIBL did not "file the agreed order" or make any supposed "misrepresent[ations] to the bankruptcy court" in the conduct of trade or commerce, Plaintiff cannot bring a FDUTPA claim on that alleged conduct.

> **5.    The AC Fails to Adequately Allege a Single Element of the IIED Claim Asserted in Count 7.**

In support of Plaintiff's IIED claim, Plaintiff alleges simply that "AIB's conduct including fraud on the court is outrageous." (AC ¶ 53.) That is patently insufficient. In order to state a claim for IIED, Plaintiff must allege "(i) extreme and outrageous conduct, (ii) an intent to cause—or disregard of a substantial probability of causing—severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress." *Lau* v. *S & M Enterprises*, 898 N.Y.S.2d 42, 43 (N.Y. App. Div. 2010) (citation omitted). "[A] cause of action for intentional infliction of emotional distress must allege conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *164 Mulberry St. Corp.* v. *Columbia Univ.*, 771 N.Y.S.2d 16, 21 (N.Y. App. Div. 2004) (internal quotation marks omitted) (quoting *Murphy* v. *Am. Home Prod. Corp.*, 58 N.Y.2d 293, 303 (1983)). This Court repeatedly has held that "false statements or misrepresentations—even if intentionally made—do not rise to the level of the extreme and outrageous conduct" sufficient to support an IIED claim. *Baraliu* v. *Vinya Cap., L.P.*, 2009 WL 959578, at *12 (S.D.N.Y. Mar. 31, 2009) (citations omitted). Even misrepresentations made in the course of litigation do not give rise to an IIED claim. *Reid* v. *Sack*, 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (allegations of "Defendants'

misrepresentation of the status of a lawsuit, the status of filings in an arbitration, or existence of and attendance at a court conference" did not qualify as "extreme and outrageous" conduct).[10]

The AC contains only threadbare allegations of the elements of an IIED claim, without any explanation of how the conduct was extreme and outrageous, Defendants' alleged intent, or the causal connection between Defendants' actions and the supposedly resulting emotional distress.  Plaintiff fails to adequately allege that anything in the Agreed Order—filed by AIBL, and outlining its settlement with the FTC—is fraudulent.  But even if the Agreed Order did contain some misrepresentation or omission (it does not) that would not qualify as "extreme and outrageous conduct," *see Baraliu*, 2009 WL 959578, at *12; *Reid*, 2021 WL 100490, at *5, let alone conduct "utterly intolerable in a civilized community," *see 164 Mulberry*, 771 N.Y.S.2d at 21,[11] that could give rise to an IIED claim.

**B.    Plaintiff Fails to Plead Defendants' Knowledge of Any Underlying Tort, Much Less That Defendants Provided Substantial Assistance in Furtherance of Any Such Tort.**

To establish aiding and abetting liability, Plaintiff must allege actual knowledge of the underlying tort; "[m]ere 'allegations of constructive knowledge or recklessness are insufficient' to satisfy the knowledge requirement."  *Berman* v. *Morgan Keegan & Co.*, 2011 WL 1002683, at *10 (S.D.N.Y. Mar. 14, 2011) (citation omitted), *aff'd*, 455 F. App'x 92 (2d Cir. 2012).

---

[10]    In addition to Plaintiff's failure to allege facts sufficient to give rise to an IIED claim, the statute of limitations expired on that claim in September 2020—one year after the filing of the Agreed Order.  *Kwarren* v. *Am. Airlines*, 303 A.D.2d 722, 722 (N.Y. App. Div. 2003) (citing N.Y. C.P.L.R. 215).

[11]    Plaintiff's IIED claim duplicates his fraudulent inducement and misrepresentation claims, requiring dismissal.  A "cause of action alleging intentional infliction of emotional distress should be dismissed 'where the conduct complained of falls well within the ambit of other traditional tort liability.'"  *Baraliu*, 2009 WL 959578, at *12 (internal quotation marks omitted) (quoting *Demas* v. *Levitsky*, 738 N.Y.S.2d 402, 409 (N.Y. App. Div. 2002)) (dismissing IIED claim where allegations of misrepresentation fell within scope of defamation claim).

Plaintiff must also allege substantial assistance, which "exists where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Id.* (internal quotation marks and citation omitted).

As discussed above, Plaintiff alleges the following underlying torts:  (i) AIBL's breach of its "statutory duties when it filed the agreed order"; and (ii) AIBL's "misrepresent[ations] to the bankruptcy court" arising from the "agreed order."  (AC ¶¶ 21–22.) Rather than allege actual knowledge, Plaintiff simply declares—without facts in support—that "[t]he defendants knew that they were aiding and abetting AIB[L] breach these duties because they were advised by counsel in Belize, Miami, Maryland and New York, had strategy discussions with the FTC, read the FTC pleadings or communicated with plaintiff."  (AC ¶ 23.)  That is plainly insufficient.  "Stripped of conclusory language, [P]laintiff's allegations . . . are based on conjecture and surmise" and cannot establish actual knowledge much less substantial assistance. *See Berman*, 2011 WL 1002683, at *10.

## II.     THE AC DOES NOT ADEQUATELY PLEAD PUNITIVE DAMAGES.

Punitive damages are not recoverable unless "the defendants' alleged conduct was so gross, wanton, or willful, or of such high moral culpability, as to warrant an award of punitive damages." *Baxter* v. *Javier*, 970 N.Y.S.2d 567, 569–70 (N.Y. App. Div. 2013) (citations omitted); *Diker* v. *Cathray Const. Corp.*, 552 N.Y.S.2d 37, 38 (N.Y. App. Div. 1990) (requiring also that the fraud was "aimed at the public generally" (quoting *Gale* v. *Kessler*, 461 N.Y.S.2d 295, 296 (N.Y. App. Div. 1983)) (internal quotation marks and citations omitted)); *Ross* v. *Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489–91 (2007).

Plaintiff's conclusory allegation that "defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights

of plaintiff who was exposed to this conduct" is not entitled to the presumption of truth generally afforded to complaints, particularly given the absurdity of Plaintiff's claims and theory of this case, as well as his long-standing history of pressing similarly baseless claims. Moreover, Plaintiff has failed to plead any facts that raise a specter of moral culpability, and as such his claim for punitive damages should be dismissed.

## III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON THE ADDITIONAL GROUND OF *FORUM NON CONVENIENS.*

*Forum non conveniens* "permits a federal court to dismiss a case over which it has jurisdiction and in which venue is otherwise proper when 'dismissal would "best serve the convenience of the parties and the ends of justice.'" *Bank of Am. Corp.* v. *Lemgruber*, 385 F. Supp. 2d 200, 233 (S.D.N.Y. 2005) (quoting *Murray* v. *British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir. 1996)). The district court determines which of the available courts—"the chosen federal court on the one hand and either an alternative state court or court of a foreign country on the other"—is most appropriate for the action. *Id.* (citation omitted). In assessing forum suitability, the district court weighs a variety of private and public interest factors, including the ease of access to sources of proof, application of foreign law, congestion in the courts, and having local controversies decided locally. *See Turedi* v. *Coca-Cola Co.*, 343 F. App'x 623, 626 (2d Cir. 2009). A plaintiff is accorded deference to their chosen forum only to the extent of "the lawsuit's bona fide connection to the United States and to [his] forum of choice." *See Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Plaintiff's claims are entirely predicated on the results of a Belizean bankruptcy proceeding that involved application of Belizean law to a dispute in Belize between two Belizean entities. To the extent this action belongs anywhere, it belongs in Belize—not in the United States. Indeed, Plaintiff initially objected to his distribution in the Belizean liquidation. If Plaintiff's

22

vexatious and repetitive litigation were to be entertained, it would undermine the efficient administration of the Belizean liquidation. No public interest would be served by allowing Plaintiff's claims to proceed in this venue, and his complaint should be dismissed for being filed in an inconvenient forum.[12]

## CONCLUSION

For the foregoing reasons, the AC should be dismissed with prejudice, and the Court should award any and all other appropriate relief in light of Plaintiff's continued pursuit of knowingly frivolous and vexatious claims.

Dated:   February 8, 2023  
        New York, New York

Respectfully submitted,

/s/ *Matthew J. Porpora*

Sharon L. Nelles  
(*nelless@sullcrom.com*)  
Matthew J. Porpora  
(*porporam@sullcrom.com*)  
Sean P. Fulton  
(*fultons@sullcrom.com*)  
Stella S. Meyer  
(*meyerste@sullcrom.com*)  
SULLIVAN & CROMWELL LLP  
125 Broad Street  
New York, New York 10004  
Telephone: (212) 558-4000

*Attorneys for Defendants*  
*Sullivan & Cromwell LLP,*  
*James L. Bromley, and*  
*Fabio Weinberg Crocco*

---

[12]    Plaintiff's position in the Amended Complaint that he filed in Florida state court—which advances the same exact claims on nearly identical allegations against a different set of defendants—is telling. There, Plaintiff declares Florida the most convenient forum for this dispute: under the heading "*Florida is forum conveniens*," Plaintiff asserts that Florida "is the most convenient forum" because, among other reasons, "[t]he [alleged] breaches took place in Miami." (Miami Am. Comp., Ex. 10 ¶ 12.)