**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FERMIN ALDABE,

                              Plaintiff,

                v.

SULLIVAN & CROMWELL LLP,
JAMES L. BROMLEY, and
FABIO WEINBERG CROCCO,

                              Defendants.

No. 23-cv-850 (AT) (GWG)

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Sharon L. Nelles (*nelless@sullcrom.com*)
Matthew J. Porpora (*porporam@sullcrom.com*)
Sean P. Fulton (*fultons@sullcrom.com*)
Stella S. Meyer (*meyerste@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

*Counsel for Defendants Sullivan & Cromwell LLP,*
*James L. Bromley, and Fabio Weinberg Crocco*

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...................................................................................1

**BACKGROUND** ........................................................................................................5

    A.    The FTC Action and Belizean Liquidation.................................................5

    B.    The Massachusetts Action .........................................................................8

    C.    The Maryland Litigation and Judge's Admonition....................................8

    D.    Motion for Injunction Against Plaintiff, and Plaintiff's Subsequent
           Litigation in Florida and New York State Court .....................................10

    E.    The Bankruptcy Court Enjoins Plaintiff ..................................................10

    F.    Plaintiff Commences New Claims by Filing the First Amended Complaint........11

**THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT** ...............................12

**STANDARD OF REVIEW** .........................................................................................13

**ARGUMENT** .........................................................................................................13

I.     **THE SAC VIOLATES THE PRE-FILING INJUNCTION AND SHOULD BE
       DISMISSED**..............................................................................................13

II.    **THE SAC FAILS ADEQUATELY TO ALLEGE THE TORT OF
       CONVERSION** .........................................................................................15

    A.    The SAC Fails Adequately To Allege Plaintiff Had a Possessory Right .............16

    B.    The SAC Fails Adequately To Allege That Defendants Exercised
           Dominion or Control Over the Palma Efuus Deposits...........................18

    C.    The SAC Fails Adequately To Allege Any Wrongful Conduct ...........................18

III.   **THE SAC FAILS ADEQUATELY TO ALLEGE A SINGLE ELEMENT OF
       INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**...............................20

IV.   **THE SAC DOES NOT ADEQUATELY PLEAD PUNITIVE DAMAGES**...............23

**V.     THE SAC SHOULD BE DISMISSED ON THE ADDITIONAL GROUNDS OF INTERNATIONAL COMITY AND *FORUM NON CONVENIENS*** ..................24

    A.    International Comity Requires the Second Amended Complaint be Dismissed to Protect the Equitable Distribution of a Belizean Debtor's Assets .................................................................................................................25

    B.    Alternatively, the SAC Should Be Dismissed as Filed in an Inconvenient Forum under *Forum Non Conveniens* ..................................................................28

**CONCLUSION** ..................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Acevado* v. *Citibank, N.A.*,
  2012 WL 996902 (S.D.N.Y. Mar. 23, 2012) ..........................................................................19

*Aldabe* v. *Atlantic Int'l Bank Ltd.*,
  2021 WL 7973542 (Mass. Super. Mar. 8, 2021) ......................................................................8

*Aldabe* v. *Cohen*,
  2022 WL 958088 (D. Md. Mar. 30, 2022)..................................................................... *passim*

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................13

*Banco De Serguros Del Estado* v. *J.P. Morgan Chase & Co.*,
  500 F. Supp. 2d 251 (S.D.N.Y. 2007)...............................................................................28, 29

*Baraliu* v. *Vinya Cap., L.P.*,
  2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ......................................................................21, 22

*Baxter* v. *Javier*,
  970 N.Y.S.2d 567 (N.Y. App. Div. 2013) ...............................................................................23

*Belize Telecom, Ltd.* v. *Gov't of Belize*,
  528 F.3d 1298 (11th Cir. 2008) .........................................................................................26, 28

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)..................................................................................................................13

*Brooks* v. *Von Lenthe*,
  2005 WL 2679716 (S.D.N.Y. Oct. 21, 2005) ..........................................................................11

*Carvel* v. *Newman*,
  2010 WL 11504368 (S.D. Fla. Nov. 9, 2010)..........................................................................14

*Colavito* v. *New York Organ Donor Network, Inc.*,
  8 N.Y.3d 43 (N.Y. 2006) ..........................................................................................................15

*In re Columbia Tuition Refund Action*,
  523 F. Supp. 3d 414 (S.D.N.Y. 2021)......................................................................................15

*In re Commodore Int'l, Ltd.*,
  242 B.R. 243 (Bankr. S.D.N.Y. 1999) .....................................................................................25

*Coughlan* v. *Jachney*,
  473 F. Supp. 3d 166, 201 (E.D.N.Y. July 20, 2020)...............................................................20

*Curry Mgmt. Corp.* v. *JPMorgan Chase Bank, N.A.*,
  2022 WL 17342495 (S.D.N.Y. Nov. 30, 2022) ...................................................................15

*EMA GARP Fund* v. *Banro Corp.*,
  2019 WL 773988 (S.D.N.Y. Feb. 21, 2019) ..............................................13, 25, 26, 27

*ESI, Inc.* v. *Coastal Power Prod. Co.*,
  995 F. Supp. 419 (S.D.N.Y. 1998) ...............................................................................16, 18

*Finanz AG Zurich* v. *Banco Economico S.A.*,
  192 F.3d 240 (2d Cir. 1999) ................................................................................................27

*Flaherty* v. *Dixon*,
  2023 WL 2051861 (S.D.N.Y. Feb. 16, 2023) ..................................................................22

*Friendship, Inc.* v. *Wu*,
  633 N.Y.S.2d 743 (N.Y. Civ. Ct. 1995) ..........................................................................21

*Fund Liquidation Holdings LLC* v. *UBS AG*,
  2021 WL 4482826 (S.D.N.Y. Sept. 30, 2021) ................................................................17

*Halvatzis* v. *Perrone*,
  156 N.Y.S.3d 428 (N.Y. App. Div. 2021) ......................................................................16

*Harville* v. *Lowville Cent. School Dist.*,
  667 N.Y.S.2d 175 (N.Y. App. Div. 1997) ..................................................................20, 22

*Hess* v. *Nationwide Mut. Ins. Co.*,
  709 N.Y.S.2d 701 (N.Y. App. Div. 2000) ......................................................................21

*Hong Mai Sa* v. *Doe*,
  406 F.3d 155 (2d Cir. 2005) ..........................................................................................14, 15

*Johnson* v. *Chairman N.Y.C. Transit Auth.*,
  377 F. App'x 46 (2d Cir. 2010) ........................................................................................14

*Jones* v. *UnitedHealth Grp., Inc.*,
  2021 WL 4443142 (S.D.N.Y. Sept. 28, 2021) ............................................................16, 17

*JP Morgan Chase Bank* v. *Altos Hornos de Mexico, S.A. de C.V.*,
  412 F.3d 418 (2d Cir. 2005) ...............................................................................................25

*Kwarren* v. *Am. Airlines*,
  303 A.D.2d 722 (N.Y. App. Div. 2003) ..........................................................................20

*Langevin* v. *Cmty. Bank N.A.*,
  642 N.Y.S.2d 427 (N.Y. App. Div. 1996) ........................................................................23

*Lau* v. *S & M Enterprises*,
   898 N.Y.S.2d 42 (N.Y. App. Div. 2010) ...................................................20

*Louime* v. *Lamanna*,
   2023 WL 138518 (S.D.N.Y. Jan. 31, 2023) ...........................................16

*Mark Andrews* v. *27 Red Music Publ'g, LLC*,
   2021 WL 4392050 (S.D.N.Y. Sept. 24, 2021)........................................23

*Moyal* v. *Munsterland Gruppe GmbH & Co. KG*,
   539 F. Supp. 3d 305 (S.D.N.Y. 2021)....................................................25

*Nat'l Liab. & Fire Ins. Co.* v. *Rick's Marine Corp.*,
   268 F. Supp. 3d 371 (E.D.N.Y. 2017) ...................................................19

*Nat. Res. Def. Council* v. *Johnson*,
   461 F.3d 164 (2d Cir. 2006)...................................................................13

*Nelson* v. *Ulster Cnty., N.Y.*,
   789 F. Supp. 2d 345 (N.D.N.Y. 2010) ..................................................21

*Nwachukwu* v. *Chemical Bank*,
   1997 WL 441941 (S.D.N.Y. Aug. 6, 1997)...........................................17

*Perry* v. *Manocherian*,
   675 F. Supp. 1417 (S.D.N.Y. 1987)........................................................21

*Pollux Holding Ltd.* v. *Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003).....................................................................29

*Regions Bank* v. *Wieder & Mastroianni, P.C.*,
   526 F. Supp. 2d 411 (S.D.N.Y. 2007).....................................................19

*Reid* v. *Sack*,
   2021 WL 100490 (S.D.N.Y. Jan. 12, 2021) ..........................................22

*RIGroup LLC* v. *Trefonisco Mgmt. Ltd.*,
   949 F. Supp. 2d 546 (S.D.N.Y. 2013).....................................................24

*Royal & Sun All. Ins. Co. of Canada* v. *Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006).....................................................................25

*In re Sanctuary Belize Litig.*,
   482 F. Supp. 3d 373 (D. Md. 2020) .........................................................5

*Scerba* v. *Allied Pilots Ass'n*,
   2013 WL 6481583 (S.D.N.Y. Dec. 10, 2013) ..........................................5

*Schwartz* v. *Cap. Liquidators, Inc.*,
   984 F.2d 53 (2d Cir. 1993).................................................................................18

*Schwartz* v. *Hotel Carlyle Owners Corp.*,
   20 N.Y.S.3d 341 (N.Y. App. Div. 2015) ...........................................................23

*Shah* v. *United States*,
   2022 WL 17747787 (2d Cir. 2022)..............................................................13, 14

*Structured Asset Sales, LLC* v. *Sheeran*,
   2021 WL 1199495 (S.D.N.Y. Mar. 30, 2021) ...................................................17

*T.D. Bank, N.A.* v. *JP Morgan Chase Bank, N.A.*,
   2011 WL 13305367 (E.D.N.Y. May 13, 2011) ..................................................18

*Three Crown Ltd. P'ship* v. *Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993)...................................................................22

*Travelers Prop. & Cas. Ins. Co.* v. *AGG Creperie*,
   42 F. Supp. 3d 444 (E.D.N.Y. 2014) .................................................................17

*Turedi* v. *Coca-Cola Co.*,
   343 F. App'x 623 (2d Cir. 2009) .......................................................................29

**Statutes**

11 U.S.C. § 1501.....................................................................................................5

11 U.S.C. § 1517.....................................................................................................6

Belize Domestic Banks and Financial Institutions Act, 2012 (Act No. 11/2012) .........................7

**Rules**

Fed. R. Civ. P. 11.................................................................................................11

Fed. R. Civ. P. 12(b)(1).......................................................................................13

Fed. R. Civ. P. 12(b)(6).................................................................................5, 13

**Other Authority**

*US Federal Trade Commission and Atlantic International Bank Ltd. Re Sanctuary Belize*, SAN PEDRO SUN (Sept. 24, 2019) ..................................................6

## PRELIMINARY STATEMENT

Plaintiff Fermin Aldabe's *third* complaint in this action advances facially absurd allegations that fail to plead even the most basic elements of his ever-changing claims.  And there can be no doubt that Plaintiff is knowingly asserting baseless claims, given his long history of unsuccessfully advancing similar claims on the same exact facts.  Indeed, this action marks Plaintiff's *fifth* attempt to challenge in U.S. courts the foreign liquidation proceedings of a Belizean bank, Atlantic International Bank Ltd. ("AIBL"), and an agreement settling claims brought by the U.S. Federal Trade Commission (the "FTC") against AIBL.  All of Plaintiff's prior challenges have been soundly rejected, resulting in dismissals across the board, admonitions by two different courts that Plaintiff risks sanction if he continues to press such baseless claims, and the issuance of a pre-filing injunction prohibiting Plaintiff from commencing any related claims without prior judicial approval.  The Second Amended Complaint should be dismissed with prejudice because it both violates the pre-filing injunction and comes nowhere close to stating a claim.

Plaintiff's claims stem from his frustration with a Belizean liquidation proceeding of a Belizean bank, AIBL.  In 2018, the Federal Trade Commission brought an enforcement action in the U.S. District Court for the District of Maryland against several entities, including AIBL.  In November 2018, the U.S. District Court for the District of Maryland froze AIBL's assets in connection with that enforcement action.  Subsequently, in April 2019, the then-Prime Minister of Belize revoked AIBL's banking license and commenced a liquidation proceeding in Belize against AIBL (governed by the laws of Belize).  In July 2019, the FTC and AIBL reached a settlement agreement in connection with the FTC's enforcement action.  In September 2019, the U.S. Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order recognizing the Belizean liquidation proceeding as a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code and simultaneously lifting the resulting automatic stay to permit the FTC

to collect on the judgment stemming from the aforementioned settlement.  Although Plaintiff has repeatedly (and unsuccessfully) argued to the contrary, the U.S. proceedings were initiated exclusively to marshal AIBL's U.S. assets—they did not bear on the priority of liquidation claims (including the claim to which Plaintiff claims entitlement) under Belizean liquidation law.

Meanwhile, in the Belizean liquidation proceeding, Palma Efuus, Ltd. ("Palma Efuus"), a Belizean holding company wholly owned by Plaintiff's wife, recovered $49,584.99 of its $72,419.75 depositor claim against AIBL—representing roughly a 68% recovery.  Unhappy with that result, and knowing that he has no claim under Belizean law to the $22,834.76 not recovered in the Belizean proceedings, Plaintiff has pursued his litigation crusade in the United States against AIBL, the liquidator of AIBL, members of the liquidator's team, the Central Bank of Belize, numerous U.S. and Belizean government officials, and U.S. counsel for AIBL. Plaintiff's prior challenges of the results of the Belizean proceeding in U.S. courts have been unanimously rejected by the Bankruptcy Court, the Maryland district court, a Massachusetts state trial court, and a Massachusetts state appeals court.  The Maryland district court "expressly cautioned" Plaintiff that, "should he try to raise variations of his concerns in further AIBL-related lawsuits, other courts may well be inclined to impose appropriate sanctions." *Aldabe* v. *Cohen*, 2022 WL 958088, at *9 n.12 (D. Md. Mar. 30, 2022).

Seven months later, the Bankruptcy Court similarly condemned Plaintiff's relentless, baseless actions.  On October 25, 2022, the Bankruptcy Court granted the Liquidator's motion for a pre-filing injunction, which bars Plaintiff from filing further actions or claims related to AIBL's liquidation proceedings without leave of that court (the "Pre-Filing Injunction"; discussed *infra* at 14–15), because such actions and claims "are patently frivolous and vexatious." Plaintiff's conversion claim—asserted for the first time in the Second Amended Complaint

2

("SAC")—violates the Pre-Filing Injunction, which expressly prohibits Plaintiff from "***filing any . . . claim*** . . . relating to . . . the Belizean Liquidation Proceeding" against "present, former and future . . . attorneys" of the debtor—which includes Defendants in this action—"without first obtaining leave from" the Bankruptcy Court.  (*See infra* at 14–15.)

The present action survived the Pre-Filing Injunction only because Plaintiff commenced it before the injunction hearing.  Indeed, Plaintiff acknowledges that he filed this action "prematurely" (in his words) expressly to avoid the then-forthcoming Pre-Filing Injunction.  (ECF No. 22 at 7.)  But the prospective nature of the Pre-Filing Injunction did not give Plaintiff *carte blanche* to file *new claims* in this action.  To the contrary, the Pre-Filing Injunction permits Plaintiff to proceed only with his previously commenced claims, which Plaintiff has since chosen to abandon.  Plaintiff's serial amendments and shifting legal theories are exactly the sort of "vexatious attempt[s] to relitigate the propriety" of a Belizean bankruptcy proceeding that caused the Bankruptcy Court to enjoin Plaintiff.  (*See infra* at 14–15.)  Pursuant to the Pre-Filing Injunction, dismissal by this Court is the appropriate remedy for violation of that order.  (*See infra* at 14–15.)

The SAC should be dismissed for the following three additional reasons:

*First*, Plaintiff fails to adequately plead conversion for several reasons.  Plaintiff does not—and cannot—allege that he had an "immediate possessory right" to Palma Efuus' funds at the time of the allegedly wrongful transfer.  Similarly, Plaintiff fails to allege that Defendants exercised any control over the funds, focusing solely on the lawful actions taken by Defendants' clients.  Additionally, Plaintiff fails to adequately allege that the transfer from AIBL to the FTC pursuant to the Agreed Order—approved by the U.S. District Court for the District of Maryland and ordered by the Bankruptcy Court—constitutes "wrongful" conduct.

*Second*, Plaintiff's IIED and punitive damages claims fail on procedural and substantive grounds.  His IIED claim is barred both by the statute of limitations and because it falls within the ambit of other tort liability, namely, his conversion claim.  On the substance, Defendants' clients' request in AIBL's Chapter 15 case that the Bankruptcy Court lift the automatic stay then in place to permit enforcement of the FTC settlement agreement is *not* wrongful as matter of law, let alone the type of "extreme and outrageous" conduct that can serve as a basis for a claim of IIED.  Plaintiff's claim for punitive damages similarly has no basis in reality.  Again, Plaintiff fails to allege that Defendants' clients did anything wrong, let alone that Defendants did anything wrong as their counsel.  To be sure, Plaintiff's conclusory statements about Defendants' conduct comes nowhere close to adequately alleging the moral culpability required for a claim of punitive damages.  And a claim for punitive damages cannot survive dismissal of related substantive claims.

*Third*, New York is not an appropriate or convenient forum for litigating Plaintiff's claims, which supposedly arise from the treatment of a Belizean depositor's claim against a Belizean bank in a Belizean liquidation proceeding under Belizean law.  As other courts repeatedly have told Plaintiff, such Belizean-centric claims have no place in a U.S. court, let alone in this Court.

In short, Plaintiff has long been on notice that his AIBL-related claims are frivolous, and his latest variations of them are no different.  Given Plaintiff's repeated failed attempts at stating a claim—in both numerous other actions and his two prior complaints in this one—dismissal should be with prejudice.

4

# BACKGROUND

## A.      The FTC Action and Belizean Liquidation

### 1.      The FTC Enforcement Action

The Belizean company Palma Efuus (formed by Plaintiff's wife) was a customer of AIBL and maintained a deposit account at the bank.  *Aldabe* v. *Cohen*, 2022 WL 958088, at *2 (D. Md. Mar. 30, 2022).   On October 31, 2018, the FTC filed a complaint against AIBL (and numerous other defendants) in Maryland district court for alleged violations of the Federal Trade Commission Act.  *See In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 385 (D. Md. 2020), *aff'd in part, vacated in part sub nom. FTC* v. *Pukke*, 53 F.4th 80 (4th Cir. 2022).[1]  In November 2018, the Maryland court "entered several orders freezing the assets of AIBL."  *See Aldabe* v. *Cohen*, 2022 WL 958088, at *2.

The FTC action and related freeze of AIBL's U.S. assets made it impracticable for AIBL to continue operating and, in April 2019, the then-Prime Minister of Belize revoked AIBL's banking license, ordered that it be liquidated, and appointed the Liquidator to handle liquidation proceedings.  (*See* Pre-Filing Injunction, Ex. 1 at 13 (Tr. 7:13–17); SAC ¶ 8.)[2]  The Liquidator subsequently filed a petition under Chapter 15 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 1501–24, before the Bankruptcy Court for recognition of the Belizean liquidation proceeding on May 13, 2019.  (Chapter 15 Petition, Ex. 2.)  Initially, AIBL was represented in the FTC and AIBL's

---

[1]      "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."  *Scerba* v. *Allied Pilots Ass'n*, 2013 WL 6481583, at *2 n.2 (S.D.N.Y. Dec. 10, 2013).  The attached exhibits—some being Plaintiff's own filings in other courts—are included for relevant context.  These additional exhibits do not bear on the infirmities of the SAC, which are apparent on its face.

[2]      All exhibits refer to the declaration of Matthew J. Porpora filed in support of this motion.

Chapter 15 case by the law firm of Dorsey & Whitney LLP (with the assistance of local counsel). (Order, Ex. 3.)  Subsequently, AIBL was represented by Sullivan & Cromwell LLP.

After prolonged litigation before both the Maryland district court and Bankruptcy Court, in July 2019, the FTC and AIBL reached a settlement agreement with respect to the FTC Action.  (*See* Pre-Filing Injunction, Ex. 1 at 14 (Tr. 8:10–12).)  Subsequently, on September 19, 2019, the Bankruptcy Court entered an order (the "Agreed Order"), recognizing the Belizean liquidation proceeding as a foreign main proceeding under 11 U.S.C. § 1517 and allowing the FTC to collect its stipulated settlement judgment.  (Agreed Order, Ex. 4.)  The following day, on September 20, 2019, Plaintiff emailed the Liquidator an objection to the settlement, roughly four days prior to the Liquidator's second notice regarding the settlement.  (*See* Pre-Filing Injunction, Ex. 1 at 15 (Tr. 9:2–6); *see also id.* at 14 (Tr. 8:18–24) ("[A]t a hearing on October 6, 2020 . . . Mr. Aldabe acknowledged receipt of the September 24th statement from the [Liquidator].").)[3]

### 2.      Plaintiff's Objection in the Belizean Liquidation

On January 6, 2020, the Liquidator submitted a disbursement schedule in the Belizean liquidation proceeding.  (Liquidation Schedule, Ex. 5.)  The disbursement schedule set forth the order of priority of claims.  (*Id.* at 14.)  The disbursement schedule also set forth the anticipated date of an initial distribution:  February or March 2020.  (*Id.*)

On January 8, 2020, Plaintiff, on behalf of his wife and Palma Efuus, filed a formal objection regarding the Liquidator's disbursement schedule in the Belizean liquidation proceeding. (Aldabe Objection, Ex. 7.)  Plaintiff sought payment of $72,419.75, the entire amount of the

---

[3]      *See also Settlement Between the US Federal Trade Commission and Atlantic International Bank Ltd. Re Sanctuary Belize*, SAN PEDRO SUN (Sept. 24, 2019), https://www.sanpedrosun.com/business-and-economy/2019/09/24/settlement-between-the-us-federal-trade-commission-and-atlantic-international-bank-ltd-re-sanctuary-belize.

depositor claim of Palma Efuus.  Despite the initial distribution date that was specified in the disbursement schedule, Plaintiff protested that Palma Efuus' claim had not yet been disbursed and a date for disbursement had not been set.  (*Id.*)  Plaintiff's objection did not address the priority of claims, or challenge the Liquidator's articulation of Belizean law, which had been outlined in the disbursement schedule.

On February 25, 2020, after considering Plaintiff's objection, the Belize Central Bank Standing Committee for Review of Objections upheld the Liquidator's decision to settle Palma Efuus' claim "in accordance with Section 116 of the Domestic Banks and Financial Institutions Act."  (Aldabe Objection, Ex. 7; *see also* DBFIA, Ex. 6, § 116.)

In June and November of 2020, the Liquidator issued two distributions to AIBL depositors based on its disbursement schedule.  (*See* Pre-Filing Injunction, Ex. 1 at 15 (Tr. 9:8–12).)  For Palma Efuus, the distribution totaled $49,584.99, an amount equal to 68.46% of its original claim, leaving $22,834.76 unrecovered.  (*See id.* at 16 (Tr. 10:7–10); Final Distribution Notice to Palma Efuus Ltd., Ex. 8.)  All depositors recovered the same percentage.  (*See* Pre-Filing Injunction, Ex. 1 at 15 (Tr. 9:8–12).)

In September 2020, Plaintiff claimed to the Bankruptcy Court that the Liquidator violated *Belizean law* by paying the FTC settlement ahead of the claims of AIBL's depositors. (Aldabe Motion, Ex. 9 at 1.)  The Bankruptcy Court held a "lengthy hearing" on Plaintiff's motion, as reflected by the 69-page transcript, and denied Plaintiff's motion.  (Mtn. to Restitute Tr., Ex. 10, 62:24–63:2; *see* Pre-Filing Injunction, Ex. 1, Tr. 15:3–19:11.)  After hearing the parties, the court stated that it "agree[d] with both the FTC and the foreign representative that this is not an issue for [the Bankruptcy Court] to decide on the principles of international comity."  (Mtn. to Restitute Tr., Ex. 10, Tr. 60:4–24.)  The court also reasoned that Plaintiff's motion was "untimely," as he was

"clearly aware of the FTC proceeding" and the settlement, and concluded that "the recognition order reflected the business judgment of the liquidator who was in [the Bankruptcy Court] seeking assistance with respect to marshalling assets or trying to repatriate assets, and when the liquidator made that business decision, that decision to settle was . . . part of the recognition order." (*Id.* at Tr. 61:6–11, 62:2–6.)  Finally, the Bankruptcy Court "would have no jurisdiction to vacate the District Court's approval of the settlement." (*Id.* at Tr. 62:12–15.)

### B.      The Massachusetts Action

Apparently displeased with the Belizean bankruptcy proceeding, Plaintiff and his wife filed a complaint on April 16, 2020, in Massachusetts state court against AIBL, its CEO and a former employee, the Liquidator and a member of his team, the then-Prime Minister of Belize, the then-Attorney General of Belize, and the then-Governor of the Central Bank of Belize, as well as unknown executives and directors of AIBL and members of the Liquidator's and Central Bank's teams. (Mass. Compl. Ex. 11.)  In the complaint, Plaintiff sought $74,999 in damages and alleged two counts of fraudulent misrepresentation and conspiracy to defraud, and three counts of conspiracy to defraud depositors. (*Id.* ¶¶ 26–99.)  The defendants moved to dismiss, after which Plaintiff engaged in extensive motion practice, including, for example, by making multiple requests for jurisdictional discovery. (*See* Mass. Docket, Ex. 12, at Nos. 12, 21.)  On March 8, 2021, the Massachusetts court dismissed Plaintiff's complaint for lack of personal jurisdiction. *See Aldabe* v. *Atlantic Int'l Bank Ltd.*, 2021 WL 7973542, at *1 (Mass. Super. Mar. 8, 2021), *aff'd*, 182 N.E.3d 343 (Mass. App. Ct. 2022).

### C.      The Maryland Litigation and Judge's Admonition

After losing in Massachusetts, on March 30, 2021, Plaintiff filed another complaint against AIBL and various individuals in Maryland district court. *See Aldabe* v. *Cohen*, 2022 WL 958088, at *3 (D. Md. Mar. 30, 2022).  In the Maryland action, Plaintiff sued the Liquidator, the

Government of Belize, a former Governor of the Central Bank of Belize, Creighton Magid (AIBL's counsel), and Commissioners of and counsel for the FTC.  *Id.* (Md. Compl., Ex. 13 ¶¶ 2–11.)  As in the Massachusetts complaint, Plaintiff asserted theories of misrepresentation and fraud, but this time in connection with the FTC settlement.  He sought $1.2 million in damages for "medical bills," and "$5 million in non-economic damages; punitive damages; and interest." *Aldabe* v. *Cohen*, 2022 WL 958088, at *3.

On March 30, 2022, the Maryland district court dismissed with prejudice all counts against the Belizean defendants and Mr. Magid.  *Aldabe* v. *Cohen*, 2022 WL 958088, at *11.  With respect to Plaintiff's claims against the Belizean defendants, the Maryland district court stated that "there was no impropriety in the settlement executed between AIBL and the FTC," and "[t]he fact that the asset freeze may have been followed by something like a run on the bank and its eventual liquidation does not in any way support Aldabe's totally unlinked claims for damages."  *Id.* at *8. Moreover, the court reasoned that, "[t]o the extent Palma Efuus Ltd. may have been harmed by the liquidation process, it was for Palma Efuus Ltd. to challenge that result and to do so in Belize, which Defendants note, Palma Efuus Ltd. appears in fact to have done."  *Id.*  The court did not rule on the Defendants' *forum non conveniens* or other additional arguments, but stated "on brief review" that "these arguments likewise would appear to have merit."  *Id.* at *9.  In dismissing the claims, the court "urge[d] Plaintiff to take careful note that it is not dismissing his claims on technical grounds, but on his substantive lack of any cognizable cause of action."  *Id.* at *9 n.12. The court went on to warn Plaintiff about the dangers of asserting frivolous claims:  "Plaintiff is expressly cautioned that, should he try to raise variations of his concerns in further AIBL-related lawsuits, other courts may well be inclined to impose appropriate sanctions."  *Id*.

**D.      Motion for Injunction Against Plaintiff, and Plaintiff's Subsequent Litigation in Florida and New York State Court**

On September 15, 2022, the Liquidator filed a motion in the Bankruptcy Court seeking, among other things, a pre-filing screening injunction against Plaintiff that would bar him from bringing further vexatious litigation concerning issues related to the AIBL liquidation. (Liquidator Motion, Ex. 14.) Just four days later, on September 19, 2022, Plaintiff filed yet another AIBL-related suit, this time in Florida state court, alleging torts against Belizean government officials.  (Miami Compl., Ex. 15.)  And one week later, on September 26, 2022, Plaintiff commenced this action in New York Supreme Court, suing AIBL's counsel—Sullivan & Cromwell, James L. Bromley, and Fabio Weinberg Crocco—for damages based on Plaintiff's inability to recover all of Palma Efuus' assets in the Belizean bankruptcy proceedings.  (Compl., Ex. 16.)  Plaintiff acknowledges that he filed the instant action "prematurely," in response to the Liquidator's Motion for the Pre-Filing injunction, before the Bankruptcy Court enjoined him from pursuing further litigation.  (ECF No. 22 at 7.)

**E.      The Bankruptcy Court Enjoins Plaintiff**

On October 25, 2022, the Bankruptcy Court granted the Liquidator's motion, enjoining Plaintiff from pursuing new AIBL-related claims without leave of that court.  (Pre-Filing Injunction, Ex. 1 at 12 (Tr. 6:10–12).)  Although the injunction was prospective and did not prevent Plaintiff from pursuing already-filed claims, the Bankruptcy Court expressly cautioned that Plaintiff might face sanctions if the court that adjudicates Plaintiff's claims in New York— *i.e.*, this Court—determines that those already-filed claims are frivolous (*see id.* at 38 (Tr. 32:11– 16)).[4]

---

[4]      Although Defendants are not seeking sanctions against Plaintiff, the Court would be well within its right to impose them *sua sponte* in order to dissuade Plaintiff from continuing his

The Bankruptcy Court explained that Plaintiff "has filed multiple claims in several jurisdictions against the debtor, [the Liquidator], the FTC, and counsel in what the Court concludes from review of the record is a vexatious attempt to re-litigate the propriety of the settlement and the treatment of depositors . . . [and] that treatment of the depositors is a matter of Belizean law." (*Id.* at 12 (Tr. 6:1–9).)  The Bankruptcy Court went on to find that Plaintiff's "continued litigation against AIB[L], or against [the Liquidator, his team, and] others involved in the AIB[L] liquidation . . . based on the FTC settlement that's long been approved and implemented"—"[t]hose are patently frivolous and vexatious claims."  (*Id.* at 43 (Tr. 37:2–12).)[5]  The Bankruptcy Court also provided that the Pre-Filing Injunction should be enforced directly in any court in which the Plaintiff violates the injunction, without resort to the Bankruptcy Court.  (*Id.* at 4, ¶ 3.)

**F.    Plaintiff Commences New Claims by Filing the First Amended Complaint**

Undeterred by the Pre-Filing Injunction, on January 13, 2023, Plaintiff filed his First Amended Complaint.  (FAC, Ex. 17.)  Although it was, at bottom, nothing more than another attack on the results of the Belizean liquidation proceeding, the FAC drastically changed the nature of Plaintiff's original complaint by changing the theory of liability (from direct liability to

---

litigation campaign—something that even the Pre-Filing Injunction has failed to accomplish.  *See Brooks* v. *Von Lenthe*, 2005 WL 2679716, at *11 (S.D.N.Y. Oct. 21, 2005) ("The Court notes that this is the second time [plaintiff] has sued the exact same defendants in the United States based on the same events . . . .  This case is frivolous, and while [plaintiff] is *pro se*, that does not excuse him from the consequences of violating Rule 11 of the Federal Rules of Civil Procedure.  While the Court at this time will not *sua sponte* impose Rule 11 sanctions on [plaintiff], he is on notice now that he may (and likely will) be sanctioned in the future for frivolous conduct if he were to file this case again in a United States court."), *report and recommendation adopted*, 2006 WL 177146 (S.D.N.Y. Jan. 24, 2006), *aff'd*, 207 F. App'x 85 (2d Cir. 2006).

[5]    In a declaration submitted to the Bankruptcy Court, Plaintiff reportedly antagonized members of the Central Bank of Belize and an attorney for the FTC and made inappropriate reference to the ethnicity of one Defendant.  (*See* Second Aldabe Decl., Ex. 18 ¶¶ 9, 20–25.)

derivative liability) and adding new claims that purported to invoke federal law.[6]  Plaintiff did not

seek the Bankruptcy Court's permission to file the FAC or commence the new claims it asserted.

## THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

With leave of the Court (ECF No. 25), Plaintiff filed the SAC on March 14, 2023,

(ECF No. 27).  The SAC is yet another complete re-write of Plaintiff's original and First Amended

Complaints.  Abandoning the previous theories of fraud on the Bankruptcy Court (as alleged in

the Complaint), or "aiding and abetting" the breach of various duties (as alleged in the FAC), the

SAC reframes Plaintiff's claims against Defendants to assert three claims:  conversion, intentional

infliction of emotional distress, and punitive damages.  The conversion claim is brand new.

Each of Plaintiff's claims is based on the allegation that, in effectuating the FTC

settlement, Defendants "knowingly advised, negotiated and took care of legal formalities to enable

their clients to convert $13,000,000 of depositors' assets."  (SAC ¶ 20.)  Plaintiff further alleges

that Defendants developed a "legally coordinated strategy" amounting to a workaround of

Belizean law, whereby the FTC would, via settlement, obtain $13,000,000 worth of AIBL's assets

that otherwise would have been distributed to depositors before the FTC.  (*See* SAC ¶¶ 9–15.)

Based on those allegations, which relate to Palma Efuus' liquidation claim, Plaintiff

seeks, in addition to the unrecovered portion of Palma Efuus' deposit ($22,834.76), damages for

his own so-called "physical harm and severe emotional distress, including among others premature

aging, thickening of the heart walls, high blood pressure, sleeping disorder, irate spells, [and]

sweating of palms."  (SAC ¶ 17.)

---

[6]      On January 11, 2023—two days before filing the AC in this action—Plaintiff filed a nearly
identical Amended Complaint in the Florida state court action.  (Miami Am. Compl., Ex. 19.)

**STANDARD OF REVIEW**

Under Rule 12(b)(6), this Court must dismiss the SAC if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Allegations that "are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

"Sister courts in this District have considered discretionary motions to dismiss on international comity grounds under Rule 12(b)(1)." *EMA GARP Fund* v. *Banro Corp.*, 2019 WL 773988, at *3 (S.D.N.Y. Feb. 21, 2019), *aff'd*, 783 F. App'x 82 (2d Cir. 2019). On a Rule 12(b)(1) motion to dismiss, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat. Res. Def. Council* v. *Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citing *Sweet* v. *Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). However, the court "may consider affidavits and other materials beyond the pleadings to resolve [a] jurisdictional issue." *EMA GARP Fund*, 2019 WL 773988, at *3 (alteration in original) (quoting *J.S. ex rel. N.S.* v. *Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

**ARGUMENT**

**I.    THE SAC VIOLATES THE PRE-FILING INJUNCTION AND SHOULD BE DISMISSED.**

Plaintiff's conversion claim—which he pleads for the first time in the SAC—violates the Pre-Filing Injunction and should be dismissed. *See Shah* v. *United States*, 2022 WL 17747787, at *2 (2d Cir. 2022) (affirming district court's dismissal of *pro se* complaint which was filed in violation of pre-filing injunction). Plaintiff is permanently enjoined from, *inter alia*, "***commencing or filing*** . . . any . . . ***claim*** . . . against [AIBL's] attorneys, in any court, . . . without

13

first obtaining leave from [the Bankruptcy Court]."  (Pre-Filing Injunction, Ex. 1 at 3.)  That is precisely what Plaintiff has done in the SAC.   The Pre-Filing Injunction was issued "prospective[ly]," meaning it did not enjoin Plaintiff from pursuing the claims he already had filed in this Court at the time the injunction issued (*id.* at Tr. 32:25), but it does not allow Plaintiff to pursue new claims.  Rather, Plaintiff was given leeway to pursue only the claims he ***already*** had filed, with the Bankruptcy Court's warning that Plaintiff should pursue those already-filed claims "at his peril, of course, to being subject to sanctions if indeed it may be found that those claims are determined to be without merit and further determined to be of a nature that justifies sanctions." (*Id.* at Tr. 35:9–13.)

In entering the Pre-Filing Injunction, the Bankruptcy Court made clear that the injunction should be enforced in the court where offending action has been taken:  "It is this Court's intent and this Court requests that any Restricted Action Court enforce the Pre-Filing Screening Injunction against Mr. Fermin Aldabe without any further order from this Court.  In the event that Mr. Fermin Aldabe directly or indirectly takes, commences or files any Restricted Action in violation of the Pre-Filing Screening Injunction, any Protected Person may seek to enforce the Pre-Filing Screening Injunction before the Restricted Action Court, including, without limitation, as a basis for dismissal of the Restricted Action, to seek the imposition of sanctions against Mr. Fermin Aldabe and to recover damages from Mr. Fermin Aldabe."  (*Id.* at 4, ¶ 3.)

The Second Circuit has repeatedly affirmed the dismissal of complaints filed in violation of pre-filing injunctions.  *See, e.g., Shah*, 2022 WL 17747787, at *2; *Johnson* v. *Chairman N.Y.C. Transit Auth.*, 377 F. App'x 46, 48 (2d Cir. 2010) (summary order); *Hong Mai Sa* v. *Doe*, 406 F.3d 155, 159 (2d Cir. 2005); *see also Carvel* v. *Newman*, 2010 WL 11504368 (S.D. Fla. Nov. 9, 2010) (dismissing complaint with prejudice after finding that plaintiff violated

the S.D.N.Y.'s pre-filing injunction order and noting that "[a]t some point Plaintiff's attempts to make end-runs around binding judgments against her must stop"), *report and recommendation adopted*, Final Order of Dismissal (No. 09-61815-WJZ) (S.D. Fla. Mar. 28, 2011), ECF No. 28. As the Second Circuit has explained, such injunctions are an important means of dissuading a "litigant [who] has a history of filing vexatious, harassing or duplicative lawsuits" from continuing that conduct. *See Hong Mai Sa*, 406 F.3d at 158 (internal quotation marks omitted). Prompt dismissal is necessary to avoid "submitting to the very imposition and abuse that the injunction was designed to end." *Id.* Accordingly, this Court should dismiss the SAC on the basis that it violates the Pre-Filing Injunction.

## II. THE SAC FAILS ADEQUATELY TO ALLEGE THE TORT OF CONVERSION.

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito* v. *New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (N.Y. 2006). "Money may be the subject of a conversion action only if it is specifically identifiable and segregated and there exists an obligation to return or otherwise treat in a particular manner the specific fund in question." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430–31 (S.D.N.Y. 2021) (internal quotation marks and citation omitted). Specifically, Plaintiff must plead facts demonstrating that "plaintiff had ownership, possession or control over the property before its conversion," and "defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Curry Mgmt. Corp.* v. *JPMorgan Chase Bank, N.A.*, 2022 WL 17342495, at *7 (S.D.N.Y. Nov. 30, 2022) (internal quotation marks and citations omitted).

Plaintiff comes nowhere close to pleading the elements of conversion. Plaintiff's conversion claim must be dismissed because Plaintiff fails to allege facts that (i) establish that

Plaintiff had any possessory right or interest in Palma Efuus' AIBL account, (ii) demonstrate that Defendants exercised any dominion or control over Palma Efuus' AIBL account, or (iii) indicate that Defendants' actions were in any way unlawful or wrongful.

### A.      The SAC Fails Adequately To Allege Plaintiff Had a Possessory Right.

Plaintiff fails to plead facts sufficient to show that he has standing to sue on behalf of Palma Efuus, let alone facts that plausibly allege that Plaintiff has ever had a possessory right to the funds in Palma Efuus' AIBL deposit account.  "'Even in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Nor may the Court 'invent factual allegations' a plaintiff has not pleaded."  *Louime* v. *Lamanna*, 2023 WL 138518, at *3 (S.D.N.Y. Jan. 31, 2023) (quoting *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  A conversion claim must be dismissed where the plaintiff does not adequately allege he had "legal ownership or an immediate superior right of possession."  *Halvatzis* v. *Perrone*, 156 N.Y.S.3d 428, 430 (N.Y. App. Div. 2021) (citation omitted).  Moreover, where the alleged conversion stems from an ownership interest purportedly granted by a contractual arrangement, such an "action[] cannot be redressed via a conversion claim."  *See, e.g.*, *ESI, Inc.* v. *Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (dismissing conversion claim where plaintiff alleged "it had an ownership interest by virtue of a contract claim and that defendants' breach of that contract denied it of that interest").

Plaintiff declares that he has standing to sue because (i) Palma Efuus supposedly assigned him its claim "for damages sustained by the conversion of monies," and (ii) he "sustained" damages "as a third party beneficiary."  (SAC ¶ 1 & n.1.)  Both contentions are legally flawed and factually implausible.  *First*, Plaintiff's conclusory assertion that Palma Efuus assigned Plaintiff its tort claim—an allegation not present in either the Complaint or the First Amended Complaint—is not sufficiently pleaded, and should be accorded no weight.  *See, e.g.*, *Jones* v.

*UnitedHealth Grp., Inc.*, 2021 WL 4443142, at *4 (S.D.N.Y. Sept. 28, 2021) (dismissing complaint that "included no well pled allegations as to the 'actual terms of Plaintiff's assignment agreement'" or "any additional details about [its] terms")); *Fund Liquidation Holdings LLC* v. *UBS AG*, 2021 WL 4482826, at *4 (S.D.N.Y. Sept. 30, 2021) (reviewing sufficiency of assignment at the pleadings stage).

        *Second*, Plaintiff cannot claim an entitlement in contract as a third-party beneficiary to Palma Efuus' alleged tort claim because "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party," *Travelers Prop. & Cas. Ins. Co.* v. *AGG Creperie*, 42 F. Supp. 3d 444, 447 (E.D.N.Y. 2014) (quoting *Espinal* v. *Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002)), and Plaintiff has not alleged any facts demonstrating otherwise.  Moreover, the Court need not credit the conclusory allegation that Plaintiff held a third-party entitlement to an agreement between Palma Efuus—owned by his wife—and its bank.  *See Structured Asset Sales, LLC* v. *Sheeran*, 2021 WL 1199495, at *10 (S.D.N.Y. Mar. 30, 2021) ("Beyond the conclusory allegation that [plaintiff] is a third-party beneficiary of the [underlying agreements,] Plaintiff alleges no facts that reasonably permit an inference that it enjoys third-party-beneficiary rights in any contract that was breached.").

        Plaintiff's conclusory allegations are clearly designed to evade the pleading standard and, given their lack of any factual support, are insufficient as a matter of law.  *See, e.g.*, *Jones*, 2021 WL 4443142, at *4.[7]  At best, Plaintiff has alleged an interest deriving from a contractual relationship between Palma Efuus and AIBL, for which he does not plead facts alleging

---

[7]     For one, Plaintiff's claim of a property interest lacks credibility because it contradicts longstanding precedent:  "funds deposited in a bank become the property of the bank," and so "a conversion claim, predicated on the unlawful use of funds belonging to another, is not sustainable between a bank and a depositor with a standard debtor-creditor relationship."  *Nwachukwu* v. *Chemical Bank*, 1997 WL 441941, at *5 (S.D.N.Y. Aug. 6, 1997).

immediate possessory rights.  (SAC ¶ 7.)  Courts routinely dismiss such conversion claims for lack of a possessory interest.  *See, e.g.*, *Coastal Power*, 995 F. Supp. at 433.

**B.      The SAC Fails Adequately To Allege That Defendants Exercised Dominion or Control Over the Palma Efuus Deposits.**

To state a claim for conversion, Plaintiff must plead facts showing that Defendants "exercise[d] . . . dominion or control over [the] property."  *Schwartz* v. *Cap. Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993) (internal quotation marks and citations omitted); *see also T.D. Bank, N.A.* v. *JP Morgan Chase Bank, N.A.*, 2011 WL 13305367, at *5 (E.D.N.Y. May 13, 2011) (conversion claim was futile because "the defendant [did] not have the disputed property in any way under his control or in his possession" (internal quotation marks and citation omitted)).

Plaintiff fails to allege that Defendants exercised any control over Palma Efuus' account held with AIBL because Defendants, acting as counsel, did not exercise any control over the AIBL account (or other depositor funds).  Plaintiff concedes this in the SAC.  Indeed, Plaintiff repeatedly avers that the "$13,000,000 of depositors' assets located in the US [were] controlled by their clients"—*i.e.*, AIBL and the Liquidator.  (SAC ¶¶ 20, 23, 29.)  Likewise, Plaintiff repeatedly alleges that it was the Belizean liquidator—not Defendants—who "ha[d] full power and authority over [AIBL's] operations and [was] tasked with liquidating [AIBL's] assets in a fair and equitable manner" (SAC ¶¶ 9, 12), and that it was Defendants' "*clients* [who allegedly] converted $13,000,000 of depositors assets," (SAC ¶ 15 (emphasis added)).  Plaintiff's allegations wholly contradict any claim that Defendants exercised dominion or control over the Palma Efuus deposits (or any other depositor funds), meriting dismissal of the conversion claim.

**C.      The SAC Fails Adequately To Allege Any Wrongful Conduct.**

Even if Plaintiff could adequately allege that Defendants exercised control over the funds—he cannot—Plaintiff fails to allege that Defendants' conduct was wrongful.  For a

conversion claim, "[i]nterference with a plaintiff's right to possession may be by a wrongful: (i) taking; (ii) detention; or (iii) disposal." *Acevado* v. *Citibank, N.A.*, 2012 WL 996902, at *11 (S.D.N.Y. Mar. 23, 2012) (internal quotation marks and citations omitted). None is present here. In particular, actions taken pursuant to a court order are *not* considered "wrongful." *See Nat'l Liab. & Fire Ins. Co.* v. *Rick's Marine Corp.*, 268 F. Supp. 3d 371, 376 (E.D.N.Y. 2017) (recognizing that a "taking pursuant to legal process or valid court order" is a "recognized justification[] in conversion"). Acting in accordance with a court order is easily distinguished from other "transfer[s] of property" that are "wrongful, unlawful, selfishly motivated, or known by the defendant to be in violation of another's rights." *Regions Bank* v. *Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 416 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008) (citations omitted). "Where the transfer was not wrongful, courts have not imposed liability." *Id.*

Plaintiff fails to plead that Defendants engaged in any wrongful taking, detention, or disposal of Plaintiff's funds. As an initial matter, the SAC does not allege that either the initial creation of the AIBL account or AIBL's detention of the funds were wrongful. (*See* SAC ¶ 7 (explaining the rationale behind opening the AIBL account).) Instead, Plaintiff alleges that Defendants engaged in wrongful disposal of the funds when Defendants allegedly "planned all the necessary legal formalities to convert depositors' money and carried them out and they planned and executed the transfer of depositors' money to the FTC in order to settle litigation with the FTC." (SAC ¶ 14.) But even if AIBL's transfer of the funds was somehow attributable to Defendants—which it is not—there was no wrongful disposal of the funds. The transfer to the FTC was made pursuant to a court-approved settlement order—neither AIBL nor Defendants can be held liable for following a judicial decree.

19

In sum, the relationship between AIBL and Palma Efuus was "strictly contractual," and neither Defendants nor AIBL exercised wrongful dominion over the funds that Plaintiff must allege to state a claim for conversion.  And even if AIBL's transfer of funds to the FTC somehow violated one of Palma Efuus' contractual rights—which it did not—Plaintiff has failed to allege facts sufficient to show that AIBL committed any acts that were "unlawful or wrongful" as is required for a conversion claim, *see Coughlan* v. *Jachney*, 473 F. Supp. 3d 166, 201 (E.D.N.Y. July 20, 2020), let alone that any such "unlawful or wrongful" action possibly could be attributable to any Defendant.  Accordingly, this Court should dismiss Plaintiff's conversion claim.

## III.   THE SAC FAILS ADEQUATELY TO ALLEGE A SINGLE ELEMENT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

In order to state a claim for IIED, Plaintiff must allege "(i) extreme and outrageous conduct, (ii) an intent to cause—or disregard of a substantial probability of causing—severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress." *Lau* v. *S & M Enters.*, 898 N.Y.S.2d 42, 43 (N.Y. App. Div. 2010) (citation omitted).  A cause of action for intentional infliction of emotional distress must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harville* v. *Lowville Cent. School Dist.*, 667 N.Y.S.2d 175, 176 (N.Y. App. Div. 1997) (quoting *Murphy* v. *Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983), *superseded by statute on other grounds as stated in Leibowitz* v. *Bank Leumi Tr. Co.*, 548 N.Y.S.2d 513 (N.Y. App. Div. 1989).  Plaintiff's IIED claim fails for several reasons.

*First*, the claim is time-barred because its one-year statute of limitations expired long ago.  *See Kwarren* v. *Am. Airlines*, 757 N.Y.S.2d 105, 106 (N.Y. App. Div. 2003) (citing N.Y. C.P.L.R. § 215).  Even under the most generous reading of the facts, the statute of limitations

for Plaintiff's IIED claim would have expired on November 17, 2021, a year after the Liquidator's final disbursement in the Belizean liquidation proceeding.  (*See* Final Distribution Notice to Palma Efuus Ltd., Ex. 8.)

*Second*, Plaintiff's IIED claim highlights the nonsensical nature of his legal theories.  Plaintiff alleges that he has standing to sue Defendants either on the basis that "depositor Palma Efuus Srl has assigned to plaintiff the right to sue defendants for damages sustained by the conversion of monies held by it on his behalf at" AIBL or "as a third party beneficiary."  (SAC ¶ 1 & n.1.)  Neither theory provides anything remotely approaching a basis for an IIED claim.  It is black letter law that  "only an individual can suffer emotional distress, not a legally created entity such as a corporation." *Friendship, Inc.* v. *Wu*, 633 N.Y.S.2d 743, 744 (N.Y. Civ. Ct. 1995); *see Perry* v. *Manocherian*, 675 F. Supp. 1417, 1430 (S.D.N.Y. 1987) ("[T]his court fails to see how an entity can suffer emotional distress. . . .").  Thus, if Plaintiff is stepping into the shoes of Palma Efuus (as he wishes but has no legal right to do), he cannot assert an IIED claim on the entity's behalf.  Similarly, "[a]s a general rule, there is no right to recover damages for emotional distress in a breach of contract action." *Hess* v. *Nationwide Mut. Ins. Co.*, 709 N.Y.S.2d 701, 703 (N.Y. App. Div. 2000).  Consequently, even if Plaintiff were permitted to proceed under the theory that he is the third-party beneficiary of a contract, he would have no basis to bring an IIED claim.

*Third*, Plaintiff's IIED claim duplicates his conversion claim, which alone requires dismissal.  A "cause of action alleging intentional infliction of emotional distress should be dismissed 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Baraliu* v. *Vinya Cap., L.P.*, 2009 WL 959578, at *12 (S.D.N.Y. Mar. 31, 2009); *Nelson* v. *Ulster Cnty.,* 789 F. Supp. 2d 345, 358 (N.D.N.Y. 2010) (barring IIED claim "based on actions that clearly and indisputably fall within . . . conversion" claim).  Because Plaintiff's IIED claim

turns entirely on his conversion claim—as Plaintiff alleges, he became distressed "[a]s a result of the conversion" (SAC ¶ 27)—his IIED claim must be dismissed as impermissibly duplicative.

*Fourth*, Plaintiff fails to allege that Defendants engaged in anything other than ordinary activity, much less "extreme and outrageous" conduct.  *See Flaherty* v. *Dixon*, 2023 WL 2051861, at *7 (S.D.N.Y. Feb. 16, 2023) ("'Extreme and outrageous conduct' is a very high bar."). Even if Plaintiff had plausibly alleged something untoward about Defendants' advisement with respect to the FTC settlement or the Belizean liquidation (he has not come close to doing so), this Court repeatedly has held that neither "a breach of professional ethical obligations" on its own, *Reid* v. *Sack*, 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021), nor "false statements or misrepresentations—even if intentionally made," *Baraliu*, 2009 WL 959578, at *12, nor "conduct that causes inconvenience or embarrassment," *id.*, can give rise to an IIED claim.  Plaintiff fails to allege that Defendants' activities in connection with the FTC settlement—"advis[ing], negotiat[ing] and t[aking] care of legal formalities" to assist a client in navigating a Chapter 15 bankruptcy proceeding and a related action—constitutes anything other than ordinary, lawful conduct.  (SAC ¶¶ 14–18, 23.)  Nor does Plaintiff's "embarrass[ment]" indicate culpable conduct. (*See* SAC ¶¶ 21, 27.)  Plaintiff thus fails to allege any activity that comes close to qualifying as "extreme and outrageous conduct," *see Baraliu*, 2009 WL 959578, at *12; *Reid*, 2021 WL 100490, at *5, let alone conduct "utterly intolerable in a civilized community," *see Harville*, 667 N.Y.S.2d at 176, that could give rise to an IIED claim.

*Fifth*, the SAC does not adequately allege that Defendants intended to cause Plaintiff harm, nor act with a substantial probability of causing him any such harm.  Conduct that "by its very nature is not aimed at any particular individual" does not satisfy the intent requirement—Plaintiff must allege conduct demonstrating that Defendants intended to cause

"emotional distress for particular individuals." *Three Crown Ltd. P'ship* v. *Caxton Corp.*, 817 F. Supp. 1033, 1048–49 (S.D.N.Y. 1993) (allegations of market manipulation too generalized to satisfy IIED intent requirement).  That, according to Plaintiff, "it was foreseeable" to Defendants that "an offshore bank" like AIBL would maintain "depositors' accounts [which] would have third party beneficiaries" affected by the lawful administration of a liquidation proceeding does not come close to alleging an intent to cause emotional distress.  (SAC ¶ 18.)

For all of these reasons, Plaintiff's IIED claim must be dismissed.

## IV.    THE SAC DOES NOT ADEQUATELY PLEAD PUNITIVE DAMAGES.

Plaintiff fails to allege that Defendants did anything wrong at all, let alone allege facts sufficient to establish a claim for punitive damages.[8]  Punitive damages are not recoverable unless "the defendants' alleged conduct was so gross, wanton, or willful, or of such high moral culpability, as to warrant an award of punitive damages." *Baxter* v. *Javier*, 970 N.Y.S.2d 567, 569–70 (N.Y. App. Div. 2013) (citations omitted); *Mark Andrews* v. *27 Red Music Publ'g, LLC*, 2021 WL 4392050, at *3 (S.D.N.Y. Sept. 24, 2021) ("[P]unitive damages are rare . . . and require not only that Defendant violated Plaintiffs' rights, but did so with evil intentions." (internal quotation marks and citations omitted)).  As such, punitive damages require more than conclusory allegations of a defendant's intent. *See, e.g.*, *Langevin* v. *Cmty. Bank N.A.*, 642 N.Y.S.2d 427, 428 (N.Y. App. Div. 1996).

Stripped of its unfounded characterizations, the SAC's allegations sketch out the lawful activities of a law firm advising its clients in connection with an FTC action and a Chapter 15 proceeding.  (SAC ¶ 14.)  Defendants "advised, negotiated, and took care of legal formalities"

---

[8]    As a threshold matter, "Plaintiff's claim for punitive damages does not survive the dismissal of the substantive claims." *Schwartz* v. *Hotel Carlyle Owners Corp.*, 20 N.Y.S.3d 341, 343 (N.Y. App. Div. 2015).

on behalf of their clients.  (SAC ¶ 29.)  Plaintiff alleges no facts to justify his illogical leap from those allegations to his conclusion that "[D]efendants' conduct . . . was so reckless or wanting in care."  (SAC ¶ 31.)  Merely applying that label to Defendants' conduct is precisely the type of conclusory allegation that routinely is dismissed as insufficient.  Given that Plaintiff's allegations fail to raise a specter of moral culpability, his claim for punitive damages fails.

## V.  THE SAC SHOULD BE DISMISSED ON THE ADDITIONAL GROUNDS OF INTERNATIONAL COMITY AND *FORUM NON CONVENIENS.*

Principles of international comity and *forum non conveniens* mandate dismissal of the SAC.  Plaintiff's SAC—like the prior two iterations of his complaint—effectively asks this Court to reverse decisions issued by the Central Bank of Belize, the U.S. District Court for the District of Maryland, and the U.S. Bankruptcy Court for the Southern District of Florida.  Plaintiff takes aim at the FTC settlement approved in Maryland (SAC ¶¶ 14–15), the approval of the Chapter 15 bankruptcy petition in Florida (SAC ¶¶ 11, 16), and, fundamentally, the interpretation of a provision of Belizean bankruptcy law as it was applied in a Belizean liquidation proceeding by a Belizean government entity (SAC ¶¶ 9–15).  Entertaining Plaintiffs' allegations would upend the FTC settlement and in effect unwind the Belizean liquidation proceeding.  Recognizing this, the Bankruptcy Court already dismissed Plaintiff's arguments concerning the FTC settlement and the liquidation proceeding based on "principles of international comity" (*see* Mtn. to Restitute Tr., Ex. 10 at Tr. 60:11–24), and gave full force and recognition to the Belizean liquidation in U.S. courts (Agreed Order, Ex. 4 at 3).  This Court should follow suit, and dismiss Plaintiff's claims on the ground that New York is an inappropriate forum for the SAC's claims.[9]

---

[9]    On a motion to dismiss for *forum non conveniens* or international comity, the "court may [] consider certain evidence outside the pleadings."  *RIGroup LLC* v. *Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) (*forum non*

**A.** **International Comity Requires the Second Amended Complaint be Dismissed to Protect the Equitable Distribution of a Belizean Debtor's Assets.**

Principles of international comity militate in favor of dismissal of the SAC in deference to the Belizean government's application of Belizean law in the Belizean liquidation proceeding. When considering whether to abstain in deference to "parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun All. Ins. Co. of Canada* v. *Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (citations omitted).

The Second Circuit has "repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding . . . so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." *JP Morgan Chase Bank* v. *Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) (citations omitted). "A foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference, and accordingly we have followed the general practice of American courts and regularly deferred to such actions." *Moyal* v. *Munsterland Gruppe GmbH & Co. KG*, 539 F. Supp. 3d 305, 308 (S.D.N.Y. 2021) (internal quotation marks and citation omitted). As such, district courts accord deference to foreign bankruptcy proceedings where (1) the foreign proceedings are procedurally fair and (2) affording comity would not violate U.S. law. *See EMA GARP Fund*, 2019 WL 773988, at *3.

---

*conveniens*); *In re Commodore Int'l, Ltd.*, 242 B.R. 243, 248 (Bankr. S.D.N.Y. 1999) (international comity), *aff'd*, 2000 WL 977681 (S.D.N.Y. July 17, 2000).

The Bankruptcy Court has *twice* already held that the Belizean liquidation proceeding shall be afforded deference under principles of international comity. (Mtn. to Restitute Tr., Ex. 10 at Tr. 60:11–24; Agreed Order, Ex. 4 at 3.) This Court need go no further. Nonetheless, both elements are readily satisfied here.

### 1.    The Belizean Liquidation Was Procedurally Fair.

Courts in the Second Circuit consider a variety of factors in evaluating the procedural fairness of a foreign liquidation proceeding, including whether creditors of the same class are treated equally in asset distribution and whether liquidators are required to give notice to potential claimants. *See, e.g.*, *EMA GARP Fund*, 2019 WL 773988, at *4.[10] In general, U.S. courts recognize the competence of the Belizean judicial system and defer to the Belizean courts' decisions. *See Belize Telecom, Ltd.* v. *Gov't of Belize*, 528 F.3d 1298, 1306 (11th Cir. 2008) ("We see no evidence that the Belizean judicial system affords litigants treatment that is inconsistent with American notions of due process."). And in particular, the Bankruptcy Court filings indicate that the Belizean liquidation proceeding satisfied all indicia of procedural fairness:

- **Creditors and depositors received notice of the liquidation.** "Notice of [the Liquidator's] appointment has been provided as required under applicable law to creditors, depositors, directors, shareholders, customers, and employees of the Debtor and to the relevant authorities in Belize and abroad, and to the" FTC. (J. Murillo May 14, 2019 Decl., Ex. 20 at 3; *see also* Liquidation Schedule, Ex. 5 at 5 (describing Belizean notice requirements and confirming compliance).)

---

[10]    In all, courts may consider: "(1) whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to the debtors' potential claimants; (5) whether there are provisions for creditors' meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims." *EMA GARP Fund*, 2019 WL 773988, at *4 (alteration in original) (quoting *Allstate Life Ins. Co.* v. *Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993)).

- **The Liquidator served as a fiduciary to depositors.** "As the liquidator of the Debtor, . . . I am charged with maximizing the Debtor's assets to provide the largest return possible to, especially, persons who deposited funds with the Debtor." (J. Murillo May 14, 2019 Decl., Ex. 20 at 3.)

- **Creditors and depositors received notice of the FTC settlement.** Copies of the press releases titled "Settlement between the US Federal Trade Commission and Atlantic International Bank Ltd. Re Sanctuary Belize" were "sent to the creditors and depositors of AIBL, *including Palma Efuus Ltd.*" (J. Murillo Sept. 25, 2020 Decl., Ex. 21 at 3 (emphasis added); *see also* Pre-Filing Injunction, Ex. 1 at Tr. 8:18–9:1.)

- **Creditors and depositors had the opportunity to be heard.** "Parties in interest had the opportunity to file objections with the Central Bank of Belize relating to the Belizean Proceeding, including with respect to the FTC Settlement and any other matter related to the liquidation." (J. Murillo Sept. 25, 2020 Decl., Ex. 21 at 3; Aldabe Objection, Ex. 7.)

- **The Belizean Proceeding is enforceable in the United States.** The Bankruptcy Court ordered that "[t]he Belizean Proceeding . . . shall be given full force and effect and be binding on and enforceable in the United States against all persons and entities." (Agreed Order, Ex. 4 at 3.)

Accordingly, the Belizean proceeding satisfies all indications of procedural fairness, meriting deference under principles of international comity.[11]

### 2. According Comity Is Consistent with U.S. Law.

In addition to evaluating the procedural fairness of the foreign liquidation proceeding, a reviewing court must determine whether according comity comports with U.S. law. *See, e.g.*, *EMA GARP Fund*, 2019 WL 773988, at *4. As relevant to this case, not only have U.S.

---

[11]     Even if the Belizean liquidation did not provide adequate procedural protection for some *other* creditor or depositor, what matters is that *Plaintiff* received notice, an opportunity to be heard, and was in fact heard. *See Finanz AG Zurich* v. *Banco Economico S.A.*, 192 F.3d 240, 249–50 (2d Cir. 1999) ("[W]e disagree with [Plaintiff's] contention that *this* action should not be dismissed in favor of the Brazilian liquidation proceeding, simply because *other* creditors might receive inadequate notice of this or another such proceeding."). Here, Palma Efuus received notice, Plaintiff objected (purportedly on behalf of Palma Efuus), and the Central Bank of Belize issued a determination with respect to Plaintiff's objection. (Notice to Palma Efuus Ltd., Ex. 22; Aldabe Objection, Ex. 7.)

courts accorded deference to the Belizean judicial system, *see Belize Telecom, Ltd.*, 528 F.3d at 1306, but the Bankruptcy Court's order granting the "Belizean Proceeding . . . recognition as a 'foreign main proceeding,'" explicitly found that such recognition "is necessary and appropriate, in the interest of public and international comity, [and] consistent with the public policy of the United States" (Agreed Order, Ex. 4 at 3).

As emphasized earlier, the Bankruptcy Court itself dismissed Plaintiff's initial attempt to relitigate the propriety of the FTC settlement and the Belizean bankruptcy proceedings on grounds of international comity. As that court explained, "the issue of whether the actions of the liquidator and payment to the FTC violates the distribution priorities under the laws of Belize is not for me to decide" based on "principles of international comity." (Mtn. to Restitute Tr., Ex. 10 at Tr. 60:11–24.) *See also Aldabe* v. *Cohen*, 2022 WL 958088, at *8 ("To the extent Palma Efuus Ltd. may have been harmed by the liquidation process, it was for Palma Efuus Ltd. to challenge that result and to do so in Belize, which Defendants note, Palma Efuus Ltd. appears in fact to have done.").[12] This Court should accord the deference required by principles of international comity to the Belizean liquidation proceeding and dismiss the SAC with prejudice.

**B.     Alternatively, the SAC Should Be Dismissed as Filed in an Inconvenient Forum under *Forum Non Conveniens*.**

*Forum non conveniens* "permits a federal court to dismiss a case over which it has jurisdiction and in which venue is otherwise proper when 'dismissal would "best serve the convenience of the parties and the ends of justice."'" *Banco De Serguros Del Estado* v. *J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 258–59 (S.D.N.Y. 2007) (quoting *Murray* v. *British*

---

[12]     "Although Palma Efuus Ltd. had the right and the opportunity to do so, neither it nor Mr. Aldabe filed any motions or formal objections in the Belizean proceeding alleging that the Foreign Representative violated the Belizean priority Scheme in connection with the settlement between AIBL and the FTC." (J. Murillo Sept. 25, 2020 Decl., Ex. 21 at 3–4.)

*Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir. 1996)).  The district court determines which of the available courts—"the chosen federal court on the one hand and either an alternative state court or court of a foreign country on the other"—is most appropriate for the action.  *Banco De Serguros Del Estado*, 500 F. Supp. 2d at 259 (citation omitted).  In assessing forum suitability, the district court weighs a variety of private and public interest factors, including the ease of access to sources of proof, application of foreign law, congestion in the courts, and having local controversies decided locally.  *See Turedi* v. *Coca-Cola Co.*, 343 F. App'x 623, 626 (2d Cir. 2009) (summary order).  "[A] plaintiff's choice to initiate suit in the defendant's home forum—as opposed to any other where the defendant is also amenable to suit—only merits heightened deference to the extent that the plaintiff and the case possess bona fide connections to, and convenience factors favor, that forum."  *Pollux Holding Ltd.* v. *Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003).

Plaintiff's claims are entirely predicated on the results of a Belizean bankruptcy proceeding that involved application of Belizean law to a dispute in Belize between two Belizean entities.  To the extent this action belongs anywhere, it belongs in Belize—not in the United States.  Indeed, Plaintiff initially objected to his distribution in the Belizean liquidation.  If Plaintiff's vexatious and repetitive litigation were to be sustained, it would undermine the efficient administration of the Belizean liquidation.  No public interest would be served by allowing Plaintiff's claims to proceed in this venue, and his complaint should be dismissed for being filed in an inconvenient forum.[13]

---

[13]    Plaintiff's position in the Amended Complaint that he filed in Florida state court—which advances the same exact claims on nearly identical allegations as Plaintiffs' First Amended Complaint in this litigation, against a different set of defendants—is telling.  There, Plaintiff declares Florida the most convenient forum for this dispute:  under the heading "*Florida is forum conveniens*," Plaintiff asserts that Florida "is the most convenient forum" because, among other reasons, "[t]he [alleged] breaches took place in Miami."  (Miami Am. Comp., Ex. 19 ¶ 12.)

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice, and the Court should award any and all other appropriate relief in light of Plaintiff's continued pursuit of knowingly frivolous and vexatious claims.

Dated:   April 4, 2023
      New York, New York

Respectfully submitted,

/s/ *Matthew J. Porpora*

Sharon L. Nelles
(*nelless@sullcrom.com*)
Matthew J. Porpora
(*porporam@sullcrom.com*)
Sean P. Fulton
(*fultons@sullcrom.com*)
Stella S. Meyer
(*meyerste@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

*Attorneys for Defendants*
*Sullivan & Cromwell LLP,*
*James L. Bromley, and*
*Fabio Weinberg Crocco*